GODFREY vs. GERMAIN and another.

*Bill of sale, or executory contract? — Parol evidence. — Fraud.*

1. *Quære* whether the following is a bill of sale or an executory contract: "In consideration of $850 to me in hand paid, I hereby sell and convey unto G. 400 bushels of spring wheat, at two dollars per bushel, to be delivered before the 1st of May, 1867, at," etc.

2. If it should be held, upon its face, an executory contract, parol evidence would not be admissible to show it intended as a bill of sale.

3. If said instrument is a bill of sale, still, where plaintiff, when he took it, knew that a suit was pending against the vendor, which might result in a verdict against him for a large sum; bought the grain without having seen it, or knowing that the vendor had it; was not accustomed to make such contracts in his business; and, immediately after paying the money therein mentioned, borrowed $650 of it; these facts, with the indefinite description of the property, and the want of any provision for or attempt at speedy delivery, *held* to show the sale fraudulent, so as to subject the grain to seizure and sale on a judgment against the vendor rendered while it was still in his possession.

APPEAL from the Circuit Court for *Dodge* County.

Action for damages for the taking and conversion of some five hundred bushels of wheat and oats, alleged to have been the property of the plaintiff. The defendant *Germain*, on the 15th of March, 1867, took the grain from the granary of one Isham, under an execution in favor of one Burdick, against the property of Isham, and by the direction of the defendant *Lewis*, who was the attorney for said Burdick. Plaintiff claimed under the following instrument: "In consideration of $850 to me in hand paid, I do hereby sell and convey unto *Israel Godfrey* four hundred bushels of spring wheat, at two dollars per bushel, and one hundred bushels of oats, at fifty cents per bushel, to be delivered before the first day of May, 1867, at the warehouse of said *Godfrey*, in the village of Juneau. March 14, 1867. HERMAN L. ISHAM." [Witnessed by two persons.] After putting this instrument in evidence, plaintiff, as a witness for himself, tes-

tified as follows: "This bill of sale was signed by Isham, and delivered to me, and said sum of $850 was paid by me to him on the 14th of March, 1867. I had a warehouse at the depot in Juneau. After *Germain* levied upon the grain, and prior to the bringing of this suit, I demanded it of him, but he refused to deliver it to me." *Question:* "At the time of this contract, was there any particular wheat or oats spoken of?" Objection overruled. *Answer:* "Isham said the grain was at his granary at Oak Grove, and was all he had. He said he would probably have over that amount, but I agreed to take it at the amount named in the contract." On cross-examination: "I did not see this grain before it was levied upon. The $850 I paid was my own money. I borrowed $650 of it back from Isham at the same time I paid it to him, or soon after. It was not the understanding between me and Isham, at the time the contract was made, that he should loan the money back to me. I did not tell *Lewis* that I had no interest in this grain, and had never bought it; or that Isham had paid me back all that money; or that I had it on my conscience, and could not stand it any longer; or that Isham got me to do it, to prevent their taking it on the Burdick judgment, if they got any. I have never paid said $650 back to Isham. Bassett came the next Saturday and wanted the money I was owing to Isham. I told him my money had not come. I had learned that day, for the first time, that Isham was about leaving the state. I told him I would pay the money to him or to Mrs. Isham. Isham said he would commence drawing the wheat the next Saturday. I am dealing in wheat and grain. I never advanced as much money on grain before as on this occasion. At that time they were trying in this court the suit of Burdick against Isham, but it was not yet decided. I never before took a written bill of sale for the grain I bought." Re-direct: "I knew the quality of the wheat, as I had bought some of the same crop before. Wheat was on that day worth $2.10, and oats fifty cents. I

said to *Lewis* that I was out about $200, and, if I could save my money by a compromise, I would carry the suit no farther. Isham had previously spoken to me to buy the grain. Prior to the contract, there was no talk of borrowing back the money, but afterward Green wanted money for his grain, and I got it from Isham. I did not know then that Isham had put his property out of his hands. I had been accustomed to buy his grain in former years." W. H. Green, for the plaintiff, testified that at the time said bill of sale was executed, Isham was a resident of Oak Grove, and reputed to be a man of means ; and that plaintiff paid him (witness) a little over $600 for wheat about that time, and after the date of said bill of sale. For the defendants, *Lewis* testified that, in September, 1867, plaintiff met him in Juneau, and said he had something on his conscience, and had carried it around long enough ; that he had never had any interest in that wheat, and never bought it ; that Isham got him to take the bill of sale, to prevent the grain from being taken on a judgment in favor of Burdick, if one should be obtained ; that he had paid all the money before the witnesses, but that Isham gave it all back to him right away. He further testified that not a word was said in this conversation about compromising this suit ; and that plaintiff did not say any thing about being out $200. H. H. Bassett testified : "I heard plaintiff's testimony. I asked him that Saturday, at Isham's request, for the money for that wheat. He said he had not got it by him, but would pay it the next week. It was in March, 1867, on Saturday after the trial in the case of Burdick against Isham."

The court found that plaintiff was owner and entitled to the possession of the grain at the time of the taking, and rendered judgment in his favor ; from which defendants appealed.

*L. T. Fribert*, for appellants, contended that, by the instrument put in evidence, Isham did not sell the specific grain in question. *Joyce v. Adams*, 4 Seld. 291, 297,

and cases there cited ; 2 Greenl. Ev. § 638, and note. 2. Plaintiff could not vary or contradict the instrument by parol proof. *Bonesteel v. Flack*, 41 Barb. 435 ; 2 Phill. on Ev. (ed. of 1868), 667, 672, and cases there cited. 3. By that instrument the grain sold was to be delivered before May 1, 1867. This suit was commenced in March, 1867, and the right of possession was not then in plaintiff. 2 Greenl. Ev. § 636. Moreover, the sale was incomplete, for want of delivery. *Joyce v. Adams, supra;* 2 Greenl. Ev. § 597. Counsel further argued from the evidence that the pretended sale was a sham.

*A. Scott Sloan* and *E. P. Smith*, for respondent :

1. By the transactions between Isham and himself, plaintiff became *owner* of the goods, and acquired at least *constructive* possession, and so could maintain trespass. *Cary v. Hotailing*, 1 Hill, 311 ; *Putnam v. Wiley*, 8 Johns. 432 ; *Hall v. Sampson*, 35 N. Y. 274. The *bona fide* intent to pass the title was all that was requisite. *Sewell v. Eaton*, 6 Wis. 490 ; *Riddle v. Varnum*, 20 Pick. 280 ; *Kimberly v. Patchin*, 19 N. Y. 330. The instrument put in evidence is a bill of sale ; its language is *in presenti;* the price was paid in full; no delivery of possession was necessary. *De Fonclear v. Shottenkirk*, 3 Johns. 170 ; *Dixon v. Yates*, 5 Barn. & Adolph. 313 ; *Higgins v. Chessman*, 9 Pick. 8 ; *Lansing v. Turner*, 2 Johns. 12 ; *Boswell v. Green*, 1 Dutch. 390 ; *Ropes v. Lane*, 9 Allen, 502 ; 6 Wis. 490 ; 14 id. 487 ; 19 N. Y. 330 ; *Turley v. Bates*, 2 Hurl. & Colt. 200–208 ; Hilliard on Sales, 86, 98, 107, 138 ; 1 Am. Law Rev. April, 1867, p. 414. 2. The parol testimony as to the identity of the goods sold was admissible. *Barry v. Bennett*, 7 Met. 361 ; *Barney v. Worthington*, 37 N. Y. 115 ; *Ganson v. Madigan*, 15 Wis. 153, 154 ; 2 Parsons on Con. 12, 82. 3. Counsel argued upon the evidence, that the presumption of fraud, arising from the vendor's remaining in actual possession, had been abundantly rebutted. 14 Wis. 487 ; 1 Chand. 40 ; 3 Cow. 188 ; 15 Mass. 244. The idea of the statute is, that there is a

secret trust, a reserved right, in favor of the debtor — that he is still the real owner, and the sale a sham ; and the facts in evidence clearly show the contrary here.

DIXON, C. J. If the right of the plaintiff to maintain this action depended solely upon the effect to be given to the written contract under which he claims title, the question presented would be a very nice and difficult one. It would then have to be decided whether the contract was executory or executed on the part of the vendor; whether it operated as a present sale of the wheat and oats in the granary of the vendor, or was a mere agreement or promise on his part to sell and deliver so many bushels of wheat and oats within the time fixed. The payment of the price by the purchaser, as recited in the contract, and the words "hereby sell and convey," imply that a sale or transfer *in presenti* was intended. On the other hand, the absence of any words in the contract specifying the particular subject of the sale, or that it was the wheat and oats in the vendor's granary, seem to imply very strongly that a present sale or transfer of title was not intended. It also appears in evidence that the parties were not present at the place where the wheat and oats were when the contract was made ; that the purchaser never saw them ; that they were never pointed out to any one, or set apart as his ; and that no delivery, formal or otherwise, was ever attempted to be made. It may be, under these circumstances, that the payment of the consideration, as recited in the contract, and the use of the words implying that an immediate transfer was intended, ought to be held to create such doubt as to its proper construction that parol testimony was admissible to show what the parties did actually intend. Or it may be that the contract ought to be held on its face and by its very terms executory, in which event no title would pass before delivery of the grain to the purchaser, and parol evidence would be inadmissible to explain, vary, modify or enlarge it. In determining this question, a

fair test would be to suppose the wheat and oats in the granary of the vendor to have been accidentally destroyed by fire after the making of the contract and before the time fixed for the delivery, and then to inquire upon whom, by the terms of the contract, the loss would have fallen—whether on the vendor or the purchaser; and if on the vendor, whether he would have been allowed to shift the loss over upon the purchaser by the introduction of parol evidence of the kind which was here received. Or, again, to inquire, supposing, within the time fixed for the delivery, the vendor had delivered or tendered to the purchaser, at his warehouse, other wheat and oats of the quantity, quality and description called for by the contract, whether the purchaser could have refused to accept the same, and have sued the vendor and recovered back the purchase-money, on the ground that the wheat or oats delivered or tendered were not the specific wheat and oats which were in the granary of the vendor at the time the contract was entered into. If the purchaser could not have so refused, or if he could not have been permitted to introduce parol evidence to show that the wheat and oats in the granary were intended, then it would appear that the contract was executory, and not executed, on the part of the vendor, and that no title passed to the purchaser. The rule laid down in the books is, that the contract amounts to an actual sale, if the specific thing is agreed on, and is ready for immediate delivery; but that the contract is only executory when the goods have not been specified, or if, when specified, something remains to be done to them by the vendor, either to put them into a deliverable shape, or to ascertain the price. Benjamin on Sales, 213–216.

The case of the "one ton of brass wire," 7 Met. 354, cited by counsel for the plaintiff, where parol evidence was received to identify the subject of the contract, was that of a chattel mortgage of the property thus generally described. In a case of that kind, where the contract

can only take effect as to the property which the mort-
gagor owns at the time of making it, there would seem
to be much stronger ground for presuming that the par-
ties intended such application than in a case like this,
where an agreement to sell, not an actual sale, is equally
valid in law, and may as well be made, with respect to
property not yet belonging to the vendor, and which he
may afterward acquire, as with respect to property which
he owns at the time. Benjamin on Sales, 58, 59.
Besides, it appeared in that case that the mortgagee, a
day or two after the execution of the mortgage, went to
the place where the wire was, and that it was there
pointed out to him by the mortgagor as the wire men-
tioned in the mortgage.

If the contract in question was, by its terms, executory,
then, as already said, the principle is plain that forbids
the introduction of parol evidence to change it from a
contract of that nature to one which was executed. This
point was directly ruled in *Fitch v. Archibald*, 29 N. J.
Law R. (5 Dutch.) 160, and is recognized as correct in
*Terry v. Wheeler*, 25 N. Y. 523.

But, because the true construction of the contract may
be considered a matter of so much doubt, it cannot but
be regarded as fortunate that the record presents another
question of a more decisive character, upon which this
action may be decided, and which must have been con-
clusive, had no other question been presented. We refer
to the question of fraud. We think, upon the evidence
disclosed by the record, that the contract was clearly
proved to have been fraudulent and void as against the
creditors of the vendor. The circumstances attending
the making of the contract; the knowledge of the plaintiff
that the trial of the slander suit was then progressing
before the court, and might result in a large verdict
against Isham; the buying of the grain without the same
having been seen by the plaintiff, or his knowing in fact
that Isham had it; the general nature of the contract, no
specific wheat and oats being mentioned; the absence of

any effort or intention to deliver or take immediate possession; the fact that the contract was an unusual one, and such as the plaintiff, in his business, was not accustomed to make; the payment of the money over to Isham, and then his immediately paying or handing back the larger part of it, thus converting the alleged payment into a matter of mere form; all these were circumstances of a most extraordinary and suspicious character, and, without the testimony of the defendant *Lewis*, which would seem to leave no doubt, must serve to mark the transaction with bad faith, and show that it was not binding upon creditors.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded, with direction that judgment be rendered in favor of the defendants and against the plaintiff, for the costs of suit.