. Morrow vs. Delaney.

Morrow vs. Delaney.

Sale of Logs. *(1, 2) Contract construed as a sale* in præsenti. *(3) Court and jury.*

1. A contract for the sale of logs declares that M. "has this day sold" the same to D.; describes them as a specific lot of logs lying in a certain designated place; states that D. is to take them all, and that they are to be scaled "where they now lie and before they are removed;" states the estimated number of feet, and the price per thousand; acknowledges part payment by delivery of a chattel to M.; and provides for the payment of an installment of the balance in two weeks, of another installment when D. could get said logs into a certain river, and of the remainder, with interest, in four months; but that if D. should fail to get the logs into the river that fall, then the two last payments should be deferred until he should be able, with due diligence, to get the logs into said river. Before the logs were removed *or scaled*, they were destroyed by fire; but D. had previously made a further payment thereon. *Held*, that the contract was a sale *in præsenti*, and the title of the logs in D. when they were destroyed.

2. Parties are presumed to contract with reference to existing laws; and as the statute provided for a lumber inspector at the place where this contract was made, whose duty it was to scale the logs, *it seems* that *either party* might have had the logs scaled by such inspector at any time; and even if it was obligatory upon the vendor to have them scaled, that alone, in view of the facts stated, would not prevent the contract from being regarded as a present sale.

3. Where the evidence is conflicting, it is not error to instruct the jury that they are the exclusive judges of the credibility of the witnesses and the weight of the evidence.

APPEAL from the Circuit Court for *Brown* County.

This action was brought to recover the balance alleged to be due for 150,000 feet of logs sold by the plaintiff to the defendant. The contract of sale is in writing, and is as follows: " This obligation witnesseth that I have this day sold to *James Delaney* a certain lot of pine saw-logs now lying on the bank of Green Bay, at and about Charles A. Masse's place, in Door county, being the same logs which said Masse sold to me. Said *Delaney* is to take all of the said logs, more or less, and which are to be scaled where they now lie; and before they are removed. Said logs are now estimated at 150,000 feet, and for which said *Delaney* agrees to pay me $5.00 for each and every 1,000 feet of the same; said *Delaney* has now delivered me one bay horse on the same in consideration of $225; and agrees to pay me $100 in cash, in two weeks from this date; and the balance of the purchase money to be paid as follows: $100 more when said *Delaney* can get the said logs in Fox river, and the remainder, with interest, on or before the 1st day of February, 1868. If for any cause said *Delaney* shall fail to get said logs into Fox river this fall, then the two last named payments to stand over until he shall, after due and proper diligence, be able to get said logs into said Fox river.

" In witness whereof we have set our hands this 5th day of October, 1867.                                     ELISHA MORROW,
                                                                 JAMES DELANEY."

The defense set up in answer, the evidence given on the trial, and the questions presented by this appeal, may be best stated by quoting somewhat at length from the charge given by the circuit judge to the jury, each proposition of which was duly excepted to by the defendant:

" This action is brought to recover an unpaid balance alleged to be due to the plaintiff upon a contract for the sale of certain

logs estimated to contain 150,000 feet, at the agreed price of $5 per thousand. If 150,000 feet was the true quantity, the whole amount of the purchase money would have been $750. The plaintiff claims that the quantity was at least 150,000 feet, and alleges that $225 was paid at the signing of the contract, and that $175 more was paid on the 14th of January, 1868. The defendant admits the making of the contract, and that he made the payments alleged by the plaintiff. These payments, as you will perceive, amount together to $400; and if the amount of logs was 150,000 feet, the unpaid balance would be $350. The last named sum is claimed by the plaintiff, with interest from October 5, 1867, the date of the contract for the sale of the logs.

"By the terms of the contract and by the defendant's failure to get the logs into Fox river in the fall of 1867, the unpaid balance now claimed by plaintiff was not due and payable until the defendant should, after due and proper diligence, be able to get his logs into Fox river. Not that these payments should stand over until he should actually get the logs into Fox river, but until after a time within which he could, with due and proper diligence, have got them into that river; the parties evidently contemplating that the wind and weather might prevent the defendant from bringing the logs into Fox river during the fall of 1867, and perhaps longer. The contract did not contemplate, however, that the logs should be at the risk of the plaintiff while the defendant was bringing or attempting to bring them to Fox river.

"The defendant claims that before he was able to get the logs into Fox river, a large portion of them were destroyed by fire; and that, because the logs were not scaled, under the contract, no title had passed to him; and that, therefore, the loss by fire ought not to be his.

"The decision as to which of these parties must bear the loss by fire, of course depends upon the ownership of the property at that time. If the parties, at the time of making the

contract, intended that by the contract itself the title should pass to *Delaney*, it did so pass, whether the logs were scaled or not; and this is especially so if the acts of the parties under the contract are inconsistent with any other view. In this case we have the written contract itself, showing that the plaintiff, as therein stated, sold to the defendant a certain lot of pine and oak logs lying on the bank of Green Bay at and about Chas. A. Masse's place, in Door county, being the same logs which the said Masse sold to the plaintiff. They clearly identify the logs, showing also that the defendant was to take all of the said logs, more or less; and which, it is true, the parties agreed were to be scaled where they then lay and before they were removed; showing further that said *Delaney* agreed to pay $5 for each and every thousand feet of the same, and that a large portion of the purchase money was not to be paid until he should, after due and proper diligence, be able to get the logs into Fox river.

" We have also the testimony of *Mr. Delaney* himself, showing that he assumed control over the logs, both by undertaking to bring them to Fox river, and by bargaining for the sale of them, or of lumber made from them, to one Sorenson, of Depere; and the fact that, while nothing was done by either of the parties towards scaling the logs, both parties treated them as the property of *Delaney*. Upon the contract so made and acted upon by these parties, as shown by the undisputed testimony in the case, I find it my duty to instruct you that the title to the logs was intended to and did pass to *Delaney*, at the date of the contract made, and that he must bear the loss by fire. You are therefore relieved from all responsibility on that point, except that you are to determine, from the estimate contained in the contract, considered in connection with the testimony of the witness Masse and others, as well as that of the defendant, *Delaney*, whether the quantity of logs was 150,000 feet or any less amount. The plaintiff only claims that they contained 150,000 feet, while defendant claims,

Morrow vs. Delaney.

and has offered some testimony to show, that the quantity was less than 150,000. You will decide these and all other questions of fact in the case for the party in whose favor you find the evidence to preponderate.

"If you find that the quantity of the logs was 150,000 feet, you will allow the plaintiff the unpaid balance of $350, with interest thereon at seven per cent. from the 5th of October, 1867; but if you find the quantity to have been less, you will only allow the plaintiff accordingly, with interest as before stated on the balance you find unpaid."

The remainder of the general charge related mainly to a counterclaim interposed by the defendant, which was allowed by the jury, and which is of no importance on this appeal.

Defendant asked the court to give the jury twenty-eight specific instructions, all of which were refused. Further reference to these will be found in the opinion.

The jury returned the following verdict: " From the instructions of the court given us, we are left to only one count in the whole case, and that is the counterclaim of the defendant for $211.02. Therefore, upon a careful consideration, we consider this claim to be just and valid. We find for the plaintiff in the sum of $232.06."

A new trial was denied, and judgment upon the verdict was entered for the plaintiff; from which the defendant appealed.

The cause was submitted by both sides on briefs.

*Hastings & Greene*, for the appellant:

I. The title to the logs had never passed to defendant. 1. The use of words of sale *in præsenti*, as "I have this day sold," is of very little if any weight in determining whether the contract is an actual sale or merely an executory contract. *Decker v. Furniss*, 14 N. Y., 611, 615; *Kelley v. Upton*, 5 Duer, 336; *Russell v. Nicoll*, 3 Wend., 112; 7 id., 404; *Lingham v. Eggleston*, 27 Mich., 324–5; *Ormsbee v. Machir*, 20 Ohio St., 295, 301; *Penniman v. Hartshorn*, 13 Mass., 88; *Foot v. Marsh*, 51 N. Y., 288; 4 Seld., 291; Supp. to Hill &

Denio, 418; 15 Johns., 349; *Cole v. Kerr*, 20 Vt., 21; 9 Minn.,
142; 2 Campb., 240.   2. The provision that the logs were to
be scaled where they then were, and before they should be re-
moved, rendered the contract executory, so as to prevent the
title from passing until such scale should be made.   (1) As
this scale was to fix the total amount of the purchase price,
each party had an interest in its being made, and a ri·r!·t to
be present or represented when it was made.   *Prescott v.*
*Locke*, 51 N. H., 94; *Lingham v. Eggleston*, 27 Mich., 324,
331; *Kimberly v. Patchin*, 19·N. Y., 330, 338; *McMahon v.*
*R. R. Co.*, 20 id., 463; 7 Wend., 407.   (2) It was the plaint-
iff's duty to take the initiative and procure the scale to be
made, giving defendant an opportunity to be present.   (a) It
is always the vendor's duty to do, or procure to be done, every-
thing which by the terms of the contract is to be done before
completion of the delivery.   *Cole v. Kerr*, and *Lingham v. Eg-*
*gleston, supra;* Story on Sales, § 389; Benj. on Sales, § 679.
That the scale provided for was to be made before the deliv-
ery was complete, is clear, because the vendee was precluded
from any control over the logs until it was made.   Story on
Sales, §§ 311, 312, note 1, 392.   (b) Where the vendee is bound
to pay only after some act has been performed, it is the vend-
or's duty to procure the performance of such act.   Here the
scaling was manifestly to precede the payment, because the
latter was not to be made until defendant should be able to
get the logs into Fox river, and he was not to remove them
until scaled.   (c) Where the vendor and vendee are to coöpe-
rate in performing a condition or other act, the vendor must
perform, so far as he is able to do so alone, and thereupon no-
tify the vendee and require performance of him, before he can
put the vendee in default.   *Holdipp v. Otway* (2 Saund., 106),
cited in Langdell's Sel. Cas. on Con., 464; id., 1021; *Lingham*
*v. Eggleston, supra.*   3. Where, by the express terms of a
contract of sale, something remains to be done, such as weigh-
ing, measuring, etc., to ascertain the price, before the vendee

acquires the *jus disponendi*, the title does not pass to him until such thing is done, unless a different intention is expressed in the contract. REDFIELD, J., in *Gibbs v. Benjamin*, 45 Vt., 124; BELL, J., in *Fuller v. Bean*, 34 N. H., 290, 300; COOLEY, J., in *Lingham v. Eggleston, supra; Prescott v. Locke, supra;* Story on Sales, §§ 220, 220 b, 296; Benj. on Sales, § 319, and notes. The rule stated in Benjamin was approved by this court in *Godfrey v. Germain*, 24 Wis., 410, 415. See also *Pike v. Vaughn*, 39 Wis., 499. In some cases attempts have been made to qualify this doctrine. (1) It has in some cases been limited to contracts where the acts to be done to ascertain the price were to be done by the vendor either alone or with the vendee. Story on Sales, editor's comment on § 296; *McClung v. Kelley*, 21 Iowa, 508; *Foster v. Ropes*, 111 Mass., 10. Even were this true, the duty of procuring the scale in this case, as we have seen, devolved upon the plaintiff. But the clear weight of authority holds that it is immaterial whether the thing to be done to determine the quantity is to be done by the buyer only, the seller only, or both. *Gibbs v. Benjamin, Fuller v. Bean, Prescott v. Locke, supra;* STORY, J., in *Barrett v. Goddard*, 3 Mason, 111. (2) Where the thing to be done is trifling, or a matter of ready and precise ascertainment, some authorities hold it will not prevent the title passing. Story on Sales, § 298; *Tansley v. Turner*, 2 Bing., N. C., 151. But these authorities assume that everything *material* must be done to ascertain the price, before the property passes; and the scaling of the logs in this case was most material. (3) The authorities generally hold that if the property is *delivered*, the transfer of the control and dominion to the vendee shows an intention to pass the title, notwithstanding something remains to be done to ascertain the price, and therefore the right of property passes. *Macomber v. Parker*, 13 Pick., 175; *Riddle v. Varnum*, 20 id., 280. But in this case the scale of the logs was to be made before any control could pass to the vendee — before there was in any sense a delivery. (4)

In a few cases the doctrine has been qualified so that the necessity of measuring, weighing, etc., does not prevent the title passing, unless such acts are provided for by the very terms of the contract. *Dennis v. Alexander*, 3 Barr, 50. But here the scaling is so provided for. With the foregoing qualifications it is the settled law, everywhere adopted in England and this country, that " where anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring or testing the goods, where the price is to depend on their quantity or quality, the performance of these things is a condition precedent to a transfer of the property, although the identical goods are ascertained, and they are in a state in which they ought to be accepted." Blackburn on Sales, 151–2; *McDonald v. Hewett*, 15 Johns., 349; *Joyce v. Adams*, 4 Seld., 291; 25 N. Y., 525; *Kein v. Tupper*, 52 id., 550, 553; *Bradley v. Wheeler*, 44 id., 495, 502; 14 id., 611, 617; 52 Barb., 96; 5 Lans., 313; *Martin v. Hurlbut*, 9 Minn., 142; *Straus v. Ross*, 25 Ind., 300; 25 Ark., 336, 545; 21 La. An., 414; 36 N. H., 311; *O'Keefe v. Kellogg*, 15 Ill., 347; 25 id., 514; *Frost v. Woodruff*, 54 id., 155; 8 Pick., 9, 13; 20 id., 280; 13 id., 175; *Houdlette v. Tallman*, 14 Me., 400; 35 id., 385; 43 Ala., 622, and other cases cited above. English cases to the same effect are cited in Benj. on Sales, §§ 320 et seq. There are a few American cases which at first view seem a little inconsistent with this doctrine; but a careful inspection shows that whatever *obiter dicta* they may contain, there was in all of them either (1) an intention directly expressed by the contract that the title should pass; or (2) the thing to be done was trifling, or a mere matter of computation; or (3) the control and dominion of the property had been acquired by the vendee. 4. The intent to pass the title, when something remains to be done to ascertain the price before delivery, must be *clear*, and the burden of proof is on the vendor (*Prescott v. Locke, supra;* 20 Pick, 280; *Morrow v. Reed*, 30 Wis., 88); it must appear from the language and

acts of the parties at the time of the bargain (111 Mass., 10); and, if the contract is in writing and provides for something to be done to ascertain the total price before the control and dominion pass to the vendee, it is an executory contract, and parol evidence is not admissible to show an intention that the title should pass. *Godfrey v. Germain*, 24 Wis., 410; *Fitch v. Archibald*, 29 N. J. Law, 160.  5. The contract being executory, anything paid upon it by the vendee may be recovered back if the property is destroyed. *Joyce v. Adams, supra;* 1 Parsons on Con., 528; 25 Pa. St., 208; 51 id., 66.

II. Even if the title had passed, the scaling of the logs was a condition precedent to the unpaid purchase price becoming payable; because such balance was not payable until defendant should be able, with due and proper diligence, to get the logs into Fox river, and he could not move them until they were scaled.  Where, by the terms of a contract, or in the nature of things, one thing must necessarily precede another, it is a condition precedent, whether such precedent thing is an act to be done by the plaintiff alone, or by the coöperation of the plaintiff and defendant, or by a third person, or is simply a contingent event.  Langdell's Sel. Cas., 464, 529, 1010; *Cadwell v. Blake*, 6 Gray, 402, 408; *Kellogg v. Nelson*, 5 Wis., 125; *Hudson v. McCarty*, 33 id., 331; *Robinson v. Fiske*, 25 Me., 401; *Smith v. Railroad Co.*, 36 N. H., 458; Benj. on Sales, §§ 374–5, and cases there cited; 2 Parsons on Con., 675.

*John C. & A. C. Neville*, for the respondent:

I. The contract was an executed one, and the title passed by its terms.  1. Where the chattels sold are clearly identified, although it may be necessary to number, weigh or measure them in order to ascertain the price of the whole at the rate agreed upon, the title will pass.  *Crofoot v. Bennett*, 2 Coms., 258; *Groat v. Gile*, 51 N. Y., 431; *Dexter v. Norton*, 55 Barb., 272; *Arnold v. Delano*, 4 Cush., 33, 40; *Riddle v. Varnum*, 20 Pick., 280; *Adams Min. Co. v. Senter*, 26

Mich., 73, 79, 80; *S. W. F.*, etc., *C. P. Co. v. Stanard*, 44 Mo., 71; *Shelton v. Franklin*, 68 Ill., 333; 2 Grant's Cas., 139; 2 Kent's Com., 496; Chitty on Con. (6th Am. ed.), 375; Benj. on Sales, §§ 315, 317. Where it is held that when anything remains to be done, as weighing, measuring, etc., the title will not pass, it is stated that this is to be done " before delivery," or to put the property into a " deliverable condition," *i.e.*, to identify it. See *Arnold v. Delano, supra*. In this case no further act was necessary to put the property into a deliverable condition. 2. Although something remains to be done, such as weighing, measuring, etc., the sale may be complete so as to transfer the title, where such is the *intention* of the parties. *Sewell v. Eaton*, 6 Wis., 490; *Morrow v. Reed*, 30 id., 81; *Morrow v. Campbell*, id., 90; *McDowell v. Laev*, 35 id., 171; *Bethel Steam Mill Co. v. Brown*, 57 Me., 18; *Cushman v. Holyoke*, 34 id., 289; *Fitch v. Burk*, 38 Vt., 689; *Riddle v. Varnum*, and *Macomber v. Parker, supra; Kelley v. Upton*, 5 Duer, 336; *Dexter v. Bevins*, 42 Barb., 573; *Curtiss v. Prinderville*, 53 id., 186; *Kimberly v. Patchin*, 19 N. Y., 330; *Russell v. Carrington*, 42 id., 119; *Johnson v. Hays*, 5 Ohio St., 102; *McCrae v. Young*, 43 Ala., 622; Benj. on Sales, §§ 310, 311 and note (c), 332, 334, note (t). 3. The acts of the parties, done in pursuance of the contract, may be considered in aid of its construction. *Reading v. Gray*, 37 N. Y. S. C., 79; *Stapenhorst v. Wolff*, 35 id., 25; *Wilcoxen v. Bowles*, 1 La. An., 230; *Parrott v. Wikoff*, id., 232; *Chicago v. Sheldon*, 9 Wall., 50; *People v. Gosper*, 3 Neb., 285; *St. Louis Gas Light Co. v. St. Louis*, 46 Mo., 121; *Price's Heirs v. Evans*, 26 id., 30; Story on Sales, § 298 *a*. Language used in this contract, and the acts of the parties under it, show irresistibly an intention that the title should pass. The words " I have sold," import a present absolute sale (8 How. Pr., 59; 6 Rob., 104, 109; 41 Barb., 435; 45 Ill., 79); and it is only where there is some provision in the contract clearly inconsistent with such a con-

struction, that the natural meaning of these words will be disregarded.

II. The title to personal property sold may pass absolutely without delivery of possession, and the risk of such property attends upon the title, and not upon the possession. *Joyce v. Adams*, 4 Seld., 296; *Terry v. Wheeler*, 25 N. Y., 524; *Thayer v. Lapham*, 13 Allen, 26; *Willis v. Willis*, 6 Dana, 49; *Buffington v. Ulen*, 7 Bush, 231; *Newcomb v. Cabell*, 10 id., 460; Benj. on Sales, 78, 315, and note. And this is so although the vendee is not entitled to possession until some other act is done. *Willis v. Willis, Arnold v. Delano, Farling v. Baxter, supra; Dexter v. Norton*, 55 Barb., 272; *Rawls v. Deshler*, 28 How. Pr., 66; *Re Hicks*, 20 Mich., 280; *Clark v. Rush*, 19 Cal., 393; Chitty on Con. (6th Am. ed.), 375.

III. When the payment for specific goods sold on credit is to be made at so much by the pound, bushel or the like, and the price is not ascertained, and cannot be ascertained with precision in consequence of the goods being lost or destroyed, the seller may, nevertheless, recover the price, if the risk is clearly thrown on the purchaser, by ascertaining the amount as nearly as may be, by evidence competent for that purpose. Benj. on Sales, § 328, note (c); *Bigler v. Hall*, 54 N. Y., 167.

LYON, J. If the contract was for the sale of the logs to the defendant, and not merely an executory contract of sale leaving the title thereto and the risk of loss thereof in the plaintiff, still the unpaid balance of the purchase money did not become due until the defendant had a reasonable opportunity to get the logs into Fox river. There can be no doubt that the defendant had such opportunity in respect to the logs not burned, and, but for the burning, would have had it in respect to all of them, before the action was commenced. Hence, assuming that the title to the logs vested in the defendant

under the contract, we need not determine the precise time when the balance of the price thereof became due; for in any view of the case such balance was due when the action was commenced.

The controlling question is, therefore, Did the title to the logs pass to the defendant by virtue of the contract? If so, the property was doubtless at the risk of the defendant, and he must pay for it, notwithstanding its destruction. Stated in another form, the question is, whether the contract is an executed contract of sale, passing the title to the property, and with it the consequent risk of the loss thereof, to the defendant; or is it a mere executory contract for a future sale, leaving both title and risk with the plaintiff?

Nearly all of the numerous instructions prayed on behalf of the defendant either assert or depend upon the proposition, that the contract is an executory contract for the sale of the logs, and does not pass the title thereto to the defendant. The argument in support of that proposition is based upon the clause in the contract, that the logs "are to be scaled where they now lie, and before they are removed." It is claimed that it was the duty of the plaintiff to have the logs scaled, or at least to join with the defendant in having it done; and that, until they were scaled, the title thereto remained in the plaintiff; and the familiar rule of law is invoked, that "the contract is only executory when the goods have not been specified, or if, when specified, something remains to be done to them by the vendor either to put them into a deliverable shape or to ascertain the price." *Godfrey v. Germain*, 24 Wis., 415.

In the present case, the logs were specified in the contract. A certain lot of logs in a particular place, not intermingled with other logs — the whole lot without exception or reservation, — was the subject of the contract. The price per thousand feet was agreed upon, and the scaling was only necessary to ascertain the aggregate price of the whole lot at the agreed

rate per 1,000 feet. The contract contains words of sale *in præsenti* — "I have this day sold;" and had the quantity been agreed upon, and the provision relative to the scaling omitted therefrom, the title would have passed to the defendant upon the execution of the instrument and by virtue of it. Cases are not wanting which hold that in a contract like the one under consideration, the title passes to the vendee (unless a different intent is manifest), even though something remains to be done by the vendor — as weighing, measuring or counting, — to ascertain the aggregate price at the agreed rate. Some of those cases are cited in the brief of counsel for the plaintiff, and we believe they rest on solid principles.

Moreover, we are not prepared to hold that this contract required the plaintiff to procure the logs to be scaled, or to join with the defendant in having them scaled. Certainly there is no express provision in the instrument to that effect. Doubtless it was competent for the plaintiff to have the scaling done, if he chose; but we fail to find the stipulation which binds him to do so. The parties are presumed to contract with reference to existing laws; and we then had, and now have, a statute which provides for a lumber inspector at Green Bay (where this contract was entered into), whose duty it is (among other things) to scale logs, and who is required to give a bond with sureties conditioned for the faithful performance of his official duties. Laws of 1864, ch. 167 (Tay. Stats., 751 et seq.). It does not seem to be a forced or unnatural construction of the contract, to hold that under it either party might have applied to the inspector and had the logs scaled at any time, but if the plaintiff did not, it was obligatory upon the defendant to do so before he could remove the logs. This view is entirely consistent with the language of the contract, and also with the hypothesis that the title to the logs passed to the defendant immediately upon the execution of the contract and by virtue of it.

The views above expressed, taken in connection with the

facts proved on the trial, as stated in the charge to the jury, and the further fact, which is not without significance, that the contract provides for the payment of interest from its date on the purchase money, impels us to the conclusion that the contract was for a sale of the logs *in præsenti*, and hence, that the learned circuit judge gave a correct construction to the instrument, and that the above mentioned instructions prayed on behalf of the defendant were properly refused.

Another instruction was asked in respect to the weight which the jury ought to give to the testimony of a certain witness, whose testimony was contradicted by other witnesses. This instruction was refused, but the jury were told that they were the exclusive judges of the credibility of the witnesses and the weight of the evidence. In this we perceive no error.

It is believed that the foregoing observations dispose of all the alleged errors. Inasmuch as we find no error in the record, the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.