Heath vs. Paul.

## HEATH, Respondent, vs. PAUL, Appellant.

*February 23 — March 22, 1892.*

*Agency: Authority to borrow money: Ratification: Evidence.*

1. As agent of J. P., one R. had the management of his store, kept the accounts thereof, and was authorized to draw checks on the "store account" of J. P. in the S. bank for the price of goods and expenses of the store, and to make overdrafts on that account, being required to sign all checks "J. P., store account, R." Drafts for goods sold to the store were frequently sent to the N. bank for collection, and R. paid them by checks, signed as above, on the S. bank. R. arranged with the N. bank that it should hold such checks (which were frequently overdrafts) for short terms before presenting them for payment, and he paid interest thereon to the N. bank. The mode of dealing, except the fact that interest was paid, came to the knowledge of J. P., and he sanctioned it so far as he was apprised of it. *Held,* that these facts were insufficient to prove that J. P. had given R. general authority to borrow money.

2. Several persons loaned money to R. upon checks signed as above upon the S. bank. Each of them testified that J. P. said to him that his checks were all right. *Held,* that this testimony, though admissible as tending to prove that J. P. had given R. general authority to borrow money, was by itself insufficient to support a finding by the jury that such authority was given.

3. Evidence that, after denying his liability to pay certain money borrowed by R. on such checks, J. P. said he expected to pay it "if it went into the store to pay for goods," is *held* not sufficient to carry to the jury the question of a ratification by J. P. of the act of R. in borrowing such money.

APPEAL from the Circuit Court for *La Crosse* County.

This action is to recover money alleged to have been loaned by plaintiff to defendant.

From early in 1884, until after the alleged cause of action herein accrued, the defendant owned and carried on a store in the city of La Crosse. He was largely engaged in other business, and gave but little personal attention to his store, which was managed and carried on principally by agents. Among these was one Roth, who had the principal charge of making purchases of goods (subject to some general supervision of defendant), of making collections of store accounts, and paying for goods and store expenses. He also had charge of the store books and bank account. Defendant kept a "store account" at the State Bank of La Crosse separate from his general personal account, and Roth had authority from defendant to draw checks on such store account for the above purposes, and was required by defendant to sign them, "*John Paul*, store account, R." Roth seems to have conducted the business thus intrusted to him, from early in 1884 to some time in 1888, with fidelity and in strict accordance with the authority thus conferred upon him by defendant. During all that time it does not appear that he borrowed any money, or attempted to do so, on account of the store or of defendant. However, he constantly accepted drafts in defendant's name drawn on defendant for the price of goods sold the store, and in like manner indorsed drafts payable to defendant drawn for goods sold from the store to the drawers thereof, and was at times allowed by defendant to overdraw the store account at the bank.

Roth became unfaithful to defendant. In 1888 he made large purchases of goods at the east, for the store, and concealed the fact from defendant. It is very evident that he was then robbing the defendant of large sums of money. To conceal his embezzlements, or to enable him to continue

them successfully, probably for both purposes, Roth borrowed large sums of money from various persons at La Crosse in the latter part of 1888 and the early part of 1889, and gave therefor checks on the State Bank signed, "*John Paul*, store account, R." He borrowed $1,000 of plaintiff, December 24, 1888, and gave therefor two such checks of $500 each, post-dated January 5, 1889. On the last-named day he borrowed $1,500 more of plaintiff, and gave two such checks therefor, of that date, one for $1,000, and the other for $500. Roth paid $700 on these checks. The balance thereof is unpaid, and this action is brought to recover the same.

The complaint counts upon such checks as the cause of action. The answer of the defendant is a general denial, and a specific denial that the signatures to such checks are his signatures.

Testimony was given on the trial to the effect that accounts or drafts for goods sold the store were frequently sent to the La Crosse National Bank for collection, and Roth would pay them by drawing checks therefor on the State Bank, signed in the authorized form. In the latter part of 1888 Roth commenced making arrangements with the National Bank to hold such checks for short terms, and he paid the bank interest thereon for the time it so held them. At the expiration of such agreed time such checks would be presented to the State Bank and paid. Frequently, perhaps usually, these checks were overdrafts on the State Bank. Defendant was ignorant of these transactions until early in February, 1889, just as he was leaving for a southern trip, when he was informed of them by the cashier of the National Bank. The amount of checks thus held at that time had become quite large. Defendant admitted to the cashier that Roth had authority to sign such checks to pay bills against the store, and that those held by the bank were all right. He also agreed to pay inter-

est thereon while the bank should hold them. It does not appear that defendant was informed that Roth had been paying interest on such suspended checks, or that the foregoing transactions came to the knowledge of the plaintiff until long after she had made the above loans to Roth. The testimony is further stated in the opinion.

The court submitted two questions to the jury as and for a proposed special verdict. These are: (1) "Did E. J. Roth have the authority, at the time mentioned in the plaintiff's complaint, to borrow money of the plaintiff for and on account of the credit of the defendant?" and, (2) "Subsequently to the loaning of such money, did the defendant ratify the transaction?" The jury answered both questions in the affirmative. A motion by defendant for a new trial was denied, and judgment entered for the plaintiff for the amount of her demand. Defendant appeals from the judgment.

For the appellant there was a brief by *Losey & Woodward* and *E. C. Higbee,* and oral argument by *Mr. Higbee* and *Mr. G. M. Woodward.*

For the respondent there was a brief by *Fruit & Brindley,* and oral argument by *Mr. J. J. Fruit.*

LYON, C. J. I. The learned circuit judge instructed the jury that the facts that Roth had the management of the defendant's store, kept the accounts thereof, was authorized to draw checks on the State Bank for the price of goods and expenses of the store, and to make overdrafts on that bank, and that defendant sanctioned his mode of dealing with the National Bank so far as he was apprised of it, were insufficient to prove that defendant gave Roth power to borrow money generally or of plaintiff. The instruction is correct. Defendant was careful to withhold from Roth the power thus to borrow money. True, he allowed him at times to make necessary overdrafts on the

State Bank to pay for goods, but this raised no presumption whatever of Roth's authority to borrow money generally of other parties. Neither did the transactions with the National Bank. The judge so instructed the jury. The jury were also correctly instructed that there was nothing in the nature of Roth's agency, so far as it was shown by direct testimony, which rendered it necessary that he should have power to borrow money, or from which any inference of the existence of such power could properly be drawn. Thus far we think the instructions are entirely accurate.

II. The court submitted the first question in the special verdict — that is, whether the defendant conferred upon Roth power to borrow money of the plaintiff on his credit — on the testimony of certain witnesses, all of whom had loaned Roth money on checks on the State Bank, signed as the checks in suit are signed. The testimony of these witnesses bearing upon the question was confined to alleged admissions by defendant, made to them after Roth's defalcations were discovered and he had been driven from the store by defendant. Of course, all this occurred long after the plaintiff had made the loans to Roth. Hence we have here no question of estoppel, and no claim that the defendant ever held out Roth as his agent to borrow money, or clothed him with apparent authority to do so, with or without the knowledge of the plaintiff when she made the loans to Roth. We have only the· question, Did the defendant authorize Roth to borrow the money of plaintiff which is sought to be recovered in this action?

The witnesses who testify to such admissions by defendant are Bacheller, Thomas, Dowling, and H. C. Heath, plaintiff's husband and agent, who made the loans in question for her. The substance of the testimony of each of the three witnesses first above named is to the effect that defendant said to him that his checks were all right. The learned circuit judge thus summarized and stated their tes-

timony. Thereupon the court left it to the jury to find whether defendant meant by those words to say, "Your checks are all right *because* Roth had authority to borrow the money,— to make the checks under the circumstances." That is to say, the jury were allowed to infer from the language used by defendant that he had given Roth general authority to borrow money. This language, without the aid of any other facts or circumstances tending in the same direction, does not authorize any such inference, and it was error to permit the jury to make such inference therefrom. Probably testimony of those admissions was admissible as tending to prove the authority claimed, but standing alone, as they substantially do, they are entirely insufficient to support a finding that such authority existed. Proof of a fact may tend to show the existence of another fact, indeed may preponderate over all testimony to the contrary, and yet be entirely insufficient to prove such other fact. *Gores v. Graff*, 77 Wis. 174; *Dunbar v. McGill*, 64 Mich. 676. This is such a case. Moreover, the drift of all the testimony is that, although defendant expressed his willingness to pay the particular checks of each witness, he constantly denied the authority of Roth to borrow money in his name. If the rule of evidence which was applied on the trial should prevail, business could not be done by agents without danger of financial ruin to principals should their agents, as in this case, prove dishonest, no matter how carefully the authority of the agents might be limited.

The testimony of the plaintiff's husband and agent, which will presently be stated, is weaker than that of the other witnesses, as tending to show that Roth had authority to borrow money for and on account of defendant.

Our conclusion is that there was no sufficient testimony to send to the jury the first question submitted to them.

III. The second question submitted to the jury, which is, Did the defendant ratify the loaning of money by plaintiff to Roth? was submitted to the jury on the testimony of

H. C. Heath only.   There is no other testimony in the case bearing upon that question.  The substance of his testimony is that in March, 1889, after defendant had learned of Roth's dishonesty, in a conversation between them defendant said to Heath, "When the matter first came up I made up my mind I would pay all these checks, and then, after deliberating on it, I thought I would wait till the books were examined before they were paid."  This was after defendant had denied his liability and refused to pay. In a later conversation defendant said either he or the bank was liable for the money, and that "I expect to pay it if it went to the store to pay for goods."  The court submitted it to the jury to find whether this was a promise to pay plaintiff, and hence a ratification of the act of Roth in borrowing the money, which, of itself, would render defendant liable therefor.   We cannot understand the mental process which finds in the words, "I expect to pay it if it went into the store to pay for goods," an absolute promise to repay the loan, especially when the defendant steadily denied both the authority of Roth and his own liability. There is no sufficient testimony of such alleged ratification to send that question to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.