THOMAS, Respondent, vs. PAUL, Appellant.

*April 13 — May 1, 1894.*

87  607
94  486
87    607
114   327

*Instructions to jury: Admissions: Ratification of unauthorized acts: Credibility of witnesses: Defining preponderance of testimony.*

1. The question being merely whether or not the defendant made an oral promise to pay checks drawn without authority in his name, instructions as to the unreliability of oral admissions are inapplicable.

2. The issue being narrowed, with the consent of both parties, to the single question whether or not the defendant made such promise, and the jury having been instructed that such promise would not be binding on him unless made with knowledge of the facts, it was not error to refuse instructions as to the ratification by the defendant of the unauthorized acts of the person who drew the checks.

3. The parties being the only witnesses, and their testimony being in direct conflict, an instruction stating the high character, experience, credit, and memory of both, and the difficulty the jury would have in determining which to believe, was not erroneous.

4. In defining preponderance of testimony in such case, it was substantially correct to say: "Preponderance, of course, means most weight; but it is an abstract idea to talk of weighing the testimony between two such men as these parties. I can tell you a sure test as to where the weight of testimony is in this case: it is just what you believe the truth is. If you believe that [the defendant] promised to repay this money, then the weight of the testimony is on the side of the plaintiff." The inaccuracy of the test given was not misleading.

5. An instruction in such case that where the question must be decided on the testimony of two witnesses who disagree and who are equally entitled to belief, the verdict must be for the defendant, was properly refused as being an invasion of the province of the jury.

APPEAL from the Circuit Court for *La Crosse* County. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Losey & Woodward* and *E. C. Higbee*, and oral argument by *G. M. Woodward*.

For the respondent there was a brief by *Winter, Esch & Winter*, and oral argument by *F. Winter*.

ORTON, C. J.   The complaint in this action charges, in substance, the defendant with having borrowed from the plaintiff the sum of $550 on the 16th day of February, 1889, and the sum of $400 on the 20th day of the same month, and that he gave the plaintiff for said loans the following checks:

"La Crosse, Wis., Feb. 16, 1889.
"*State Bank of La Crosse.*
"Pay to W. D. Thomas,      $550.00.
"Five Hundred and Fifty Dollars.
"JNO. PAUL STORE ACCOUNT,
"R."

The other check is like this one, except the date is February 20, 1889, and the amount is $400.   The plaintiff presented these checks to the bank, and payment was refused, and he then, on the 6th day of March, 1889, presented the checks to the defendant, and he agreed to honor the same and repay the sums borrowed; and at divers times the defendant agreed to repay said sums, and he now refuses to pay the same.   The defendant, by answer, denied these allegations, except of the demand or request to pay, and denied the signature to the checks to be his signature.

The facts were that one E. J. Roth was at the time the general financial manager of the store of the defendant in La Crosse, called the "Trade Palace," and had been for some years.   He had been in the habit of issuing similar checks on the bank in the general course of the business of the concern, but had never borrowed money on such checks, to the knowledge of the defendant.   He had finally shown himself to be dishonest and to have robbed the defendant of large sums of money, and about the 6th day of March, 1889, he was turned out of his place and went away.   It would seem from the case of *Heath v. Paul*, 81 Wis. 532,— a case similar to this,— that this Roth had borrowed money from various persons at La Crosse in the

Thomas vs. Paul.

latter part of 1888, and issued therefor similar checks, and had obtained large sums of money from the plaintiff, Heath, and gave him similar checks in December, 1888, and the defendant became aware of these transactions early in February, 1889. This transaction with the plaintiff was probably the last one before his exposure. The money so borrowed from the plaintiff was paid to Roth in the store and on the store counter; but it seems to have been conceded on both sides, and so ruled by the court, that the question whether this money went into the business or was used for the benefit of the defendant was not material to the case. The real issue is thus stated by the court in instructing the jury, and was not excepted to by either party: " And this action is based upon the claim that *Mr. Paul*, after he knew of the transaction between the plaintiff and Mr. Roth, agreed to pay it. This is all the question of fact there is in it." The question of the binding obligation of such a promise or agreement is foreclosed as follows: "If *Mr. Paul* promised to pay it, he must pay it;" and this was not excepted to. This not only simplifies the issue of fact, but establishes the law by mutual consent.

The testimony of the plaintiff on this issue is as follows: On the 6th day of March, 1889, he met the defendant on the corner of Fourth street, and they walked along together, and it was raining, and they went to the steps of the opera house, and he had these checks in his hand, and *Mr. Paul* took the checks and looked at them, and said: " These checks are all right. I will honor them. I will pay them." He seemed to know all about them. I knew then that he had put Roth out of the store. I think he said Roth had been robbing him, and that he did not want to be pressed for the money that day. I next met him at his mill, and six or seven times at that place afterwards, and I said I had come to get my money on these checks. He said this

was a bad business, and that things were in confusion, and that I must not press him, but that I would get my money. I had another conversation at the mill in the winter, and ten or twelve times after the first, and I told him I had come to get my money on these checks, and he told me not to be impatient, that I would get my money. I told him how I came to loan the money to Roth. This is substantially all the plaintiff's testimony on the subject of the defendant's promise or agreement to pay the checks. It is sufficient to say that this evidence, if believed and found to be true by the jury, would warrant them in finding a verdict for the plaintiff.

The defendant, as a witness in his own behalf, testified in substance that all of the above testimony of the plaintiff in respect to his having made any promise to pay the checks was absolutely untrue, and that the plaintiff never asked him to pay the checks, and he never promised or agreed to pay them. It is unnecessary to state more particularly the defendant's testimony, but suffice it to say that his denial of the testimony of the plaintiff on this question was as broad, direct, and positive as language could make it.

There does not appear to have been any corroborating testimony of that of either the plaintiff or defendant on this question of the defendant's promise to pay the checks, except the circumstances of the case. It was a question of credibility between them, for the jury alone to decide. The jury found a verdict in favor of the plaintiff for the amount of the two checks and interest.

The errors assigned by the learned counsel of the appellant relate to certain instructions requested to be given by them, and some particular instructions given by the court to the jury. The requests are very long, and some of them undertake to state the testimony, but neither fully nor impartially.

First. The first and second instructions asked relate to

the unreliability of verbal *admissions*, and the caution with which they should be received. " Admissions are concessions or acknowledgments made by a party of the existence or truth of certain *facts.*" 1 Bouv. Law Dict. 123. A promise or an agreement to pay money is not in any sense an admission, but is a fact to be proved like any other issuable fact. An admission may be made of this fact or concerning it, but the admission is not the fact. Such an admission should be received cautiously. There was no such admission in the case, and therefore the instructions were not applicable. The testimony all related to the fact of the promise of the defendant to pay the checks. Oral testimony, depending on the memory of witnesses, is not as reliable as written or .documentary evidence, but the jury would not usually need such an instruction. It is obvious and self-evident.

Second. The third, fourth, fifth, and sixth instructions asked relate to the *ratification* of the unauthorized action of Roth in borrowing the money and issuing the checks, and the preponderance of evidence necessary to prove it. If the ratification of the acts of Roth is in the case at all, it is a mere conclusion of law from the defendant's promise to pay the checks. It was not a fact to be submitted to the jury. · The issue was narrowed by the court, with the consent of both parties, to the single simple question, " Did the defendant promise to pay the money?" The court commenced his charge by saying that: " The plaintiff loaned some money to Mr. Roth, who was, for some purposes, the agent for *Mr. Paul*, in the name of *Paul*, and on *Mr. Paul's* credit; but this was done under such circumstances that *Mr. Paul* was not liable for the loan. And this action is based upon the claim that *Mr. Paul*, after he knew of the transaction between the plaintiff and Roth, *agreed* to pay it. That is all the question of fact there is in it." This was not excepted to, and both parties are precluded

from wandering from this specific issue. Other parts of said instructions relate to the knowledge of the facts the defendant must have had to be bound by such a promise. The court in the above instruction told the jury that this action is based upon the claim that *Paul* agreed to pay the money "*after he knew of the transaction* between the plaintiff and Roth." Again, and further on in the instructions, the court said: "A promise to pay it when he did not know what had been done, would not bind him," and, further, "That is a question for you to say,— whether he knew the facts relating to the transaction sufficiently to enable him to determine whether he ought to or wanted to repay it." This was sufficient to inform the jury that the promise, to be binding, must have been made with the full knowledge of the facts; and that is all there is in the instructions asked, except in the last one, relating to the preponderance of the evidence necessary to prove the promise, and that will be considered on the exception to the charge on the same subject. The court did not err in refusing the instructions requested.

1. The first instruction excepted to was a very flattering statement of the high character, experience, credit, and memory of both parties, and the difficulty the jury would have in determining which to believe. All there was of it was, he placed the parties on an equality as to character and soundness of mind. Of these the learned judge seemed to take judicial knowledge. It was neither improper nor harmful.

2. The court said: "You should be satisfied fairly that *Mr. Paul* promised to pay this money, or you should find for the defendant. Now, the law says that you shall be satisfied by a preponderance of the testimony." Then follows that which was excepted to: "Preponderance, of course, means the most weight; but it is an abstract idea to talk about weighing the testimony between two such

men as these parties. I can tell you a sure test as to where the weight of testimony is in this case: it is just what you believe to be the truth is. If you believe that *Mr. Paul* promised to repay this money, then the weight of the testimony is on the side of the plaintiff." These instructions are substantially correct. Preponderance means the most weight. It is as correct a definition of preponderance as can be given, and the jury are instructed that, to entitle the plaintiff to recover, there must be the most weight, or the preponderance, of the evidence that the defendant made the promise. The obvious inaccuracy, that the belief of the jury that the defendant made the promise is evidence of the preponderance of the evidence in favor of it, instead of making the preponderance of the evidence the cause of their belief, could not have misled the jury. The rule the court gave in the first place was strictly correct, and was not hard to understand, and that superseded the necessity of giving the last instruction requested on the same subject.

3. The court, after saying that the promise of the defendant without knowing what had been done would not bind him, said: "But I do not see any question here of that kind. *Mr. Paul* knew at the time of these conversations that the money had been loaned on his credit, and he probably knew — I should think it was fair to think that he knew — of the facts in relation to this loan, which would enable him to determine whether he was willing to repay it or not." But this question was left to the jury, as above stated. This opinion of the court was strictly correct. What possible fact was there that could have affected the defendant's decision or promise to pay the checks that he did not know? He knew of other similar loans made by Roth, and he knew just how this loan was made. He knew whether Roth was authorized by him to make the loan, and whether it was for his benefit the money was loaned. He

Thomas vs. Paul.

knew Roth was dishonest, and had defrauded him of much money, and that he had removed him from the trust, and that he had gone away. It is impossible to conceive of a single material fact he did not know. Whether he knew that the money loaned had gone into and had been used in his business, the court ruled, on behalf of the defendant, was immaterial and could not affect his liability. But even that he ought to have known from the entries in his books, or the absence of any such entries; and he had, before that, reason and occasion to inquire in respect to similar transactions. There was really no such question to be submitted to the jury, and what instructions the court gave to the jury on the subject were calculated to confuse, rather than to aid, them in arriving at a verdict. The plain and simple question whether the defendant made the promise without condition or qualification was first submitted to the jury without any exception being taken. The mischief the learned counsel of the appellant now complain of was done without any exception thereto. It was afterwards too late to ask the court to add such conditions and qualifications.

4. The court was asked to instruct the jury, in effect, that, where the question must be decided on the testimony of two witnesses who disagree, and *who are equally entitled to belief*, the verdict must be for the defendant or the negative of the proposition. The main vice of this instruction is that it invades the province of the jury on the question of the credibility of the witnesses. The jury are the exclusive judges of the credibility of witnesses and of the weight of their testimony. *Kellogg v. Nelson*, 5 Wis. 125; *Morrow v. Delaney*, 41 Wis. 149; *Bowe v. Rogers*, 50 Wis. 598; *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106. It presents an impossibility. The jury can no more find that the two witnesses are equally entitled to belief in such a case than they could find that both of them told the truth. To say to the jury, if it should find that both parties are equally entitled

to belief, is an instruction that the jury are at liberty to so find, and that would invade the province of the jury. *Roberts v. State*, 84 Wis. 361. The court has no right to say anything about the credibility of the parties as witnesses. The question whether the parties were equally entitled to belief should not have been submitted to the jury, even in this hypothetical form, " If you should so find." The court had no right to anticipate that the jury would so find. There is no rule of logic or of law that they should find for the defendant upon such a contingency. The real and only subordinate question was which of the two parties told the truth, and the jury should not have been trammeled, confused, or diverted by such a questionable hypothesis.

This case was very ably tried, and the arguments of the learned counsel of the appellant on these various questions were able and ingenious as well as specious and plausible. We are unable to find any error in the record that ought to reverse the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.

NEWMAN, J., took no part.