## MARSH MILLING & GRAIN CO. v. GUARANTY STATE BANK OF ARDMORE.

No. 8469—Opinion Filed April 2, 1918.

(171 Pac. 1122.)

1. **Banks and Banking — Purchase of Bill of Lading with Draft Attached — Ultra Vires — Statute — "Buying or Selling Goods, Chattels, Wares or Merchandise."**

A state bank, buying a draft, with a bill of lading for a car of merchandise attached, which bill of lading, together with the

draft, is indorsed to it, is not engaging in trade or commerce by buying or selling goods, chattels, or merchandise in contravention of section 266, Rev. Laws 1910.

**2. Carriers — Transfer of Bill of Lading —Title to Property.**

When a bill of lading in favor of the drawer is by him indorsed to a bank with draft attached, and the draft paid to the drawer by the bank, such transaction has the effect to transfer the legal title of the property called for in the bill of lading to the bank.

**3. Carriers — Conversion of Goods — Intervention — Proof of Value.**

In an action against a railroad company for the conversion of a car of grain covered by a bill of lading held by a bank, the railroad company paid into court the amount demanded by the bank. A milling company intervened in said action, claiming an interest in the money so paid into court. Held, that the railroad company having confessed its liability to pay the amount demanded by plaintiff, as between the plaintiff and the intervener no proof of the value of said car of grain was necessary.

(Syllabus by Rummons, C.)

Error from County Court, Carter County; Thomas W. Champion, Judge.

Action by Guaranty State Bank of Ardmore, Okla., against the St. Louis & San Francisco Railway Company and others. Marsh Milling & Grain Company intervenes. Judgment for plaintiff, and intervener brings error. Affirmed.

Geo. S. March, for plaintiff in error.

J. A. Bass, for defendant in error.

Opinion by RUMMONS, C. On October 6, 1914, one J. N. Barrall delivered to the Gulf, Colorado & Santa Fe Railroad Company, at Davis, Okla., one car of oats for delivery to Madill, Okla. A bill of lading was issued by said railroad company to J. N. Barrall, with instructions to notify Marsh Milling & Grain Company at Madill, Okla. J. N. Barrall attached this bill of lading to a draft upon the Marsh Milling & Grain Company for the sum of $582.-85, which draft and bill of lading he negotiated and transferred by indorsement to the plaintiff, and received credit for the face value of the draft. Barrall thereafter drew from the plaintiff bank all of said funds except the sum of $68. Upon the arrival of the car of oats at Madill, the St. Louis & San Francisco Railway Company delivered it to the intervener, Marsh Milling & Grain Company. Payment of the draft, upon presentation, was refused by Marsh Milling & Grain Company. The

plaintiff then commenced this action against the St. Louis & San Francisco Railway Company to recover the sum of $582.85 for the conversion of said car of oats, claiming to be the owner thereof because of the indorsement to it of said bill of lading. The railway company came into court and filed an affidavit reciting that it had in its possession the sum of $582.85 paid to it by the intervener, and offered to pay said sum of money, and that the money was paid to it and turned into court without collusion between it and the intervener. Upon order of the court the money was paid into the registry of the court by the railroad company. Marsh Milling & Grain Company filed a petition of intervention denying that plaintiff was the owner of the car of oats or the owner and holder of the bill of lading, alleging that the plaintiff held said bill of lading and draft attached merely as a collecting agent for J. N. Barrall. The petition further alleges an indebtedness due the intervener from J. N. Barrall in the sum of $462.95. The plaintiff moved to strike the petition in intervention from the files, which motion was overruled by the court, plaintiff excepting. Plaintiff, in reply to the petition in intervention, alleged the purchase of the bill of lading in good faith and in due course of business.

Upon the trial the cashier of the plaintiff testified that it had purchased the bill of lading by discounting a draft attached thereto in the sum of $582.85 from J. N. Barrall; that Barrall was given credit for the face value of the draft upon his account with the plaintiff; that the draft has never been paid, and that Barrall had drawn out all of said sum except the sum of $68. The intervener offered evidence tending to show that Barrall was indebted to it in the sum of $462.95. At the conclusion of the testimony the court sustained the motion of the plaintiff to direct a verdict in its favor. The intervener, having unsuccessfully moved for a new trial, brings this proceeding in error to reverse the judgment rendered upon such verdict.

The only assignment of error argued in the brief of counsel for the intervener is that the court erred in overruling its motion for a new trial. Under this assignment it is urged that plaintiff was not entitled to recover because the transaction was ultra vires, being in contravention of section 2666, Rev. Laws 1910, which provides:

"No bank shall employ its moneys, directly or indirectly, in trade or commerce, by buying or selling goods, chattels, wares or merchandise."

Counsel for intervener, we think, misconceives the nature of this transaction. The plaintiff in the instant case did not purchase from Barrall the car of oats in controversy, but it did purchase from him the draft upon the intervener, to which the bill of lading, duly indorsed, was attached. The purchase of the draft carried with it the bill of lading as collateral security for the payment of the draft, and ownership of the bill of lading vested title in plaintiff to the car of oats covered by such bill of lading, under the provision of section 829, Rev. Laws 1910. The purchase of this draft and bill of lading is clearly within the powers given by our statutes to a banking corporation. Section 259, Rev. Laws 1910. Among the powers enumerated in that section is the power to buy and sell exchange, so that, even if the plea that the transaction was ultra vires as to the plaintiff may be interposed by intervener, which we do not determine, it is apparent that the contention is without merit.

It is further contended by the intervener that ownership of the bill of lading did not transfer title to the oats to the plaintiff bank so as to entitle it to maintain an action for the conversion thereof. Unfortunately for the plaintiff, this court has determined this question adversely to its contention. In State National Bank v. Wood, 43 Okla. 251, 142 Pac. 1002, it is said:

"Where a bill of lading in favor of the assignor is by him indorsed to the bank with draft attached, and the draft paid to the assignor by the bank, held, that such a transaction had the effect to transfer the legal title of the property called for in the bill to the bank."

The next contention by the intervener is that there was no evidence as to the value of the car of oats, and therefore no evidence warranting the court in directing a verdict in favor of the plaintiff in the sum of $582.85. It is true the record contains no evidence as to the value of this car of oats, but it must be remembered that this action was commenced by the plaintiff against the St. Louis & San Francisco Railway Company. The railway company, being unwilling to defend, paid into court the amount alleged to be due plaintiff in its petition. The issue raised by the plea in intervention was the title of the plaintiff to the money so paid into court. The intervener claimed to be entitled to the sum of $462.95 of the money so paid into court, upon the theory that the money was the property of Barrall, and that he was indebted to it in that sum. No issue was presented in the pleadings as to the value

of the car of oats. The only controversy was over the funds paid into court by the defendant railway company in satisfaction of its liability. The right of the plaintiff to recover having been determined, the amount of its recovery was fixed by the admission of the defendant whom plaintiff had elected to sue. Goodrich v. Williamson, 10 Okla. 617, 63 Pac. 974. The intervener had no interest in the fund except to establish its claim to a portion of it as the property of Barrall, and is not now in a position to question the amount of plaintiff's recovery, but could only question plaintiff's title to the funds.

Finding no error in the record, the judgment should be affirmed.

By the Court: It is so ordered.