ELIZABETH BICKFORD, Respondent, *v.* HENRI MENIER et al., Appellants.

The rule that a principal is liable for the acts of his agent, within the apparent scope of his authority, only applies where a third person has acted, believing and having a right to believe that the agent was within his authority, and where such person would sustain loss if the act of the agent was not considered that of the principal.

To authorize an inference of authority in an agent it must be practically indispensible to the execution of the duties really delegated; it is not sufficient that the act of the agent is convenient or advantageous, or more effectual in the transaction of the business provided for.

Where defendants, doing business in France, sent an agent to New York city, with authority to receive consignments of goods from his principals, to care for and sell them, and after paying the expenses of the business from the receipts, to remit the balance to them, and where such agent carried on the business so entrusted to him in his own name. *Held,* that no authority in the agent could be implied to borrow money for his principals; and that they were not liable for moneys borrowed by him without their authority, to pay an indebtedness due from him, to them; also that no inference of authority could be drawn from the fact that the agent had been especially authorized to borrow in certain cases.

*Bickford* v. *Menier* (36 Hun, 446) reversed.

(Argued June 30, 1887; decided December 13, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 8, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict. (Reported below, 36 Hun, 446.)

The nature of the action and the material facts are set forth in the opinion.

*S. P. Nash* for appellants.  A power to borrow ·must be clearly shown.  All the presumptions are against it.  Factors and consignees entrusted with goods for sale have no right, in addition to owing their principals for proceeds, to involve them by additional obligations.  (1 Chit. on Cont. [4th ed. 1874], 293; *Hawtayne* v. *Bourne*, 7 M. & W. 595; *Ricketts* v. *Bennett*, 4 C. B. 686; *Rossiter* v. *Rossiter*, 8 Wend. 494; 1 Pars. on Cont. 42, 43, note *e ; Tucker* v. *Woolsey*, 64 Barb. 142; *Bank* v. *Buckbee*, 1 Abb. Ct. App. Dec. 86; 3 Keyes, 461; *Bates* v. *First Nat. Bk.*, 89 N. Y. 286; *Tallmage* v. *Third Nat. Bk.*, 91 id. 531; *The Julia Blake*, 107 U. S. 418; *McCready* v. *Thorn*, 51 N. Y. 454.)  Guenin being simply an agent, could not have conferred any powers upon Bickford to bind the defendants.  His sending him out to sell goods was probably ratified, but this did not involve a power to borrow money on the credit of the principals.  (2 Kent, 633; *Newton* v. *Bronson*, 13 N. Y. 587; *Lewis* v. *Ingersoll*, 3 Abb. Ct. App. Dec. 55; 1 Keyes, 347.)  Guenin would have been a competent witness to prove what Bickford's authority was, but his statements and declarations were not competent, as they were not a part of the *res gestæ.* (*White* v. *Miller*, 71 N. Y. 118; *Alexander* v. *Cauldwell*, 83 id. 480, 486.) When there is no evidence of custom to interpret a vague authority conferred upon agents, and no conflict of evidence as to what the employment was, the question as to whether any particular transaction is within the scope of the agent's apparent authority is one for the court, not the jury.  (*Millbank* v. *Deniston*, 21 N. Y. 386; *Ruis* v. *Renauld*, 100 id. 256.)

*John B. Pannes* for respondent.  The right to borrow money was within the apparent scope of Mr. Bickford's authority, and the plaintiff had a right to rely upon that apparent authority.  (*Hearne* v. *Keene*, 5 Bosw. 570; *Pentz* v. *Stanton*, 10 Wend. 271.)  The defendants are estopped from denying the authority of the agent, Bickford, to borrow

money for their business by their acquiesence in such borrowing for nearly seven years with knowledge of the fact. (*Wood* v. *Auburn R. R. Co.*, 6 N. Y. 167; *Huncken* v. *Knocke*, 23 W. Dig. 17.) The question, whether the authority under which Bickford acted, included the right to borrow money was a question of fact for the determination of the jury, the evidence being conflicting. (Code of Civ. Pro. § 1337; *In re Ross*, 87 N. Y. 514; *Davis* v. *Clark*, id. 623; *Marx* v. *McGlynn*, 88 id. 357; *Hewlett* v. *Elmer*, 103 id. 157; *In re Will of Darrow*, 95 id. 668.) The powers of a general agent are co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals, (*Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Pechner* v. *Phœnix Ins. Co.*, 65 N. Y. 207.)

RUGER, Ch. J.   This action was brought by the plaintiff to recover of the defendants the sum of £1,200, alleged to have been loaned to them, by her in the following sums at the times mentioned, viz., £200 in November, 1878; £200 in March, 1879, and £800 in May, 1879.   Previous to these loans the plaintiff does not appear to have had any personal or written communication with the defendants in respect thereto, but alleges that she loaned the money to one Edward Bickford, an alleged agent of the defendants.

The loans were made at the city of New York, of which place the plaintiff and Edward Bickford, who were brother and sister, were both residents, and the defendants resided at Paris, in France.   It is not claimed that Edward Bickford had any written power of attorney to borrow money for the defendants, or any positive unwritten or verbal authority to do so, but it is argued that the plaintiff had the right to imply such authority, from the power which Edward Bickford appeared to exercise as the agent of the defendant.   The power which such agent really possessed and the scope of his agency is left, by the case, altogether to be inferred from the course of business pursued by the agent, and the verbal agree-

ment between the parties under which he entered into the employment of the defendants. That he was an agent for certain purposes is not disputed, but it is strenuously contended by the defendants that he had no power to borrow money.

The evidence as to the terms of the contract of employment and as to the methods of transacting the business carried on under it, is quite vague and inconclusive, and we have been unable to discover therefrom any facts from which an intention, on the part of the defendants, to vest the agent with authority to borrow money in their names, for the purposes of the business in which he was employed, can reasonably be derived. It was said by Judge COMSTOCK in *Mechanics' Bank* v. *New York and New Haven Railroad Company* (13 N. Y. 632), " that underlying the whole subject there is this fundamental proposition that a principal is bound only by the authorized acts of his agent    This authority may be proved by the instrument which creates it, and beyond the terms of the instrument or of the verbal commission, it may be shown that the principal has held the agent out to the world in other instances as having an authority which will embrace the particular act in question. I know of no other mode in which a controverted power may be established." This doctrine was somewhat extended in the case of the *New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y. 30), where it was held, " that when the authority of an agent depends upon some fact outside the terms of his power and which, from its nature, rests particularly within his knowledge, the principal is bound by the representations of the agent, although false, as to the existence of such fact."

Such extension of the rule, however, has no application to this case, as the facts proved do not bring it within the principal stated. It would seem to be the general rule that no acts of an agent can be resorted to, to establish a power, not included within the terms of his commission, except those which are brought to the knowledge of his principals and are approved or acquiesced in by them.

It was said by Judge ANDREWS, in *Welsh* v. *Hartford Insurance Company* (73 N. Y. 10), that "the authority of an agent is not only that conferred upon him by his commission, but also as to third persons, that which he is held out as possessing. The principal is often bound by the act of his agent in excess or abuse of his actual authority, but this is only true between the principal and third persons who, believing and having a right to believe that the agent was acting within and not exceeding his authority, would sustain loss if the act was not considered that of the principal." A reference to the undisputed evidence in the case, will show the nature of the agency intended to be created by the defendants, and the extent of the power which may fairly be implied therefrom. The rule that a principal is bound not only by the acts of the agent, which are expressly authorized by his commission, but also for the exercise of all powers which are necessary and essential to the execution and performance of the express purposes described in his commission, is assented to by the court below and by both parties to the action. In view of this rule let us look at the case, for the purpose of discovering the real authority conferred.

The defendants were chocolate manufacturers, carrying on their business and residing in the city of Paris, France. They also had a branch factory and agency in the city of London, under the charge and management of one Emile Guenin. In and subsequent to 1868 Edward Bickford was a clerk in their employ in London, and in 1872, for certain reasons, deeming it desirable to establish an agency for the sale of their goods in New York, they made overtures to him, to proceed there and receive consignments and make sales of their manufactures upon a salary. In relation to the original employment, Mr. Bickford testified as follows: "I came from London to New York to establish the house of Chocolate Menier for these defendants; at first I opened an office at 45 Beaver street; cleared the goods from the ship, and commenced selling their goods, and from that time forward, up to 1882, I continued in business in New York city for them; during that time I

made my returns and received goods from the London house; * * * when I came from London to New York to open this chocolate establishment, I brought no power of attorney with me; I had several cases of goods, chocolate, and I opened in the name of Edward Bickford, and the business was carried on in that name; I sold chocolate and other manufactured goods on a salary. * * * I opened books of account and made returns from time to time; rendered accounts to Mr. Guenin, of London; * * * from that time down to 1879 I kept regular books of account, and a bank account in James G. King's Sons, also in the Bank of the Metropolis, in the Merchants and Manufacturers', the Irving, and the New York National Exchange Bank; those accounts were all kept in the name of Edward Bickford."

These extracts from Bickford's evidence embrace all of the facts proved by the plaintiff relating to the character of the original employment, and the nature of the agency intended to be conferred upon Bickford. It will be seen therefrom, that the sole authority actually conferred was the right to receive the property of the defendants, to store and sell it. An implied power may be derived, from the express powers mentioned, to apply such part of the proceeds of sale as was necessary to pay his salary, and legitimate expenses required in carrying on the business. It follows as a necessary consequence that it was his duty to remit the balance to his principals. There is certainly nothing in the performance of these duties which rendered it necessary that Bickford should borrow money on the credit of his principals. It is idle to argue that an authority to borrow money may be implied from a naked power to receive and sell property and remit proceeds. The duties of an agent in such a case are analogous to those of a factor, and it is well settled that such an agent has no authority to borrow money in the name of his principal. (1 Parsons on Contracts, 42, note *e*; 1 Chitty on Contracts [11 Am. ed.] 293; *Rossiter* v. *Rossiter*, 8 Wend. 494; *Hawtayne* v *Bourne*, 7 M. & W. 595.)

If we examine the evidence relating to the course of the

business actually carried on under this employment, we shall fail to find any exercise of a power to bind his principals for borrowed money, or any similar power which would authorize the implication that he possessed such a power. No evidence appears authorizing the inference that the defendants held Bickford out to the American public as an agent of theirs for any purpose. The business was all carried on in the individual name of Edward Bickford, and it does not appear that the names of the defendants were in any way used in the business. There was evidence that Bickford was in some way introduced by the defendants to the banking firm of John G. King & Sons, but nothing was shown authorizing the inference that he was thereby empowered to borrow money generally of them in the name of his principals. It is quite significant that in a course of correspondence extending over a period of ten years between the agent and his principals, no allusion is made to the existence of any such power, and neither is there any apparent ratification by the principals of the exercise of such power on the part of the agent. From a settlement of the accounts of the parties made as of the date of May 1, 1879, it appeared that the New York agency had run behind and become indebted to the defendants, over and above the property remaining on hand at the agency in the sum of £1,613, 18s. This sum represented the accumulated deficiencies of Bickford for a long period of time, and was chargeable to him as so much cash, which he was liable to account for to the defendants on demand. In other words he had, up to that time, appropriated to his own use the moneys of the defendants and failed to liquidate his obligations to them. He was enabled to square his accounts at this time by the generosity of his principals in voluntarily writing off therefrom the sum of £1,574 18s. 3d. Bickford, then, according to his own statement, started to continue the business discharged from any pecuniary liability to the defendants. Although £400 of the sum recovered in this action had been previously borrowed by Bickford, no part of it entered into the statement of May 1, 1879, and no report of such borrowing had been made by

Bickford to his principals at that time. It is obvious if this sum had entered into that statement, as it should have done if it was then in truth a liability of the defendants, Bickford's deficit had been untruely represented to the defendants, and it ought to have been increased nearly $2,000. It is an incontrovertible inference from the evidence, that from a time anterior to these alleged loans down to a time subsequent thereto, Bickford was largely indebted to the defendants and liable immediately to be called upon for the payment of such indebtedness. A series of ten drafts dated on different days and running from October 5, 1878, to January 19, 1879, drawn by Guenin upon Bickford for small sums aggregating about £200 appear in evidence, and were apparently drawn to recover from Bickford some part of his indebtedness to his principals. Although no other drafts appear in the case, it is fairly inferable from the evidence that such drafts were generally used, and that the mode of remitting the proceeds of the goods sold by Bickford to which defendants were entitled, was by the payment of the drafts drawn upon him by the defendants.

To infer that it was within the apparent scope of Bickford's agency to borrow money in the name of his principals to pay his own debt to them, involves a manifest absurdity. The subject of borrowing was, on one or two occasions, referred to in the correspondence between Bickford and Guenin, but a careful examination shows that it invariably referred to a borrowing by Bickford of a particular firm to discharge his obligations to defendants, and no inference can be drawn therefrom that Guenin contemplated a loan upon the credit of the Meniers. It is not claimed that the plaintiff knew of these letters or transactions under them, or was thereby induced to loan the money in question, and she apparently relied altogether upon the actual authority possessed by Bickford. It is also quite clear that the references in the letters related to specific transactions, when, if anything, a special authority alone was conferred, and afford no basis for

an inference that any general authority was possessed by, or intended to be given to the agent to use the credit of his principals.

Bickford testified that in the course of his agency he probably borrowed and remitted to his principals from $15,000 to $20,000, but there is no evidence in the case showing that he borrowed this money upon the credit of the Meniers, or that he did so at all until after special authority was given therefor, or that he did it for any other purpose except to discharge his obligations to his principals. If we come to the particular transaction in question we find no evidence of any loan by the plaintiff to the Meniers, or upon their credit. No representation was made by the agent that he had authority to borrow for the Meniers, and no note or memorandum was given by him to the plaintiff at the time of the loan. The drafts through which the loans were made were drawn by the plaintiff, and made payable to Edward Bickford individually.

All proof of the transaction was confined to the oral evidence of Miss Bickford and her brother given on the trial. Their evidence does not materially vary as to the circumstances of the loan and is most concisely stated in the testimony of the plaintiff. She says: "When I came over from England in November, I loaned £200 to him for the business of Menier; I loaned the next £200 in March, the next year; my brother was going to England to see Mr. Guenin, *and he required the money for the drafts*, and I was to be left in charge of the business, and I could not be left without money to pay the drafts; *I loaned it for that purpose entirely;* the £800 was loaned when he returned from England; he returned the end of April some time, and in May it was advanced; *it was loaned for the same purposes as the other money was loaned.*"

This evidence does not show that Bickford claimed to the plaintiff to have authority to borrow money in the name of the Meniers, or that he in fact, did borrow it upon their credit, or to discharge their obligations. It is probably true, in a general sense, that he wanted it for the business of Menier, but that was a business which he was carrying on in his own name and

had incurred an indebtedness to them in performing. It was this indebtedness that the drafts were drawn to recover, and the plaintiff seems to have been cognizant of this fact. It is difficult to see how she could have supposed, that she was lending money to the Meniers, when she was obviously supplying money to pay the obligations of her brother to them.

The plaintiff has been allowed to recover in the action, upon the theory that the borrowing, in question, was within the apparent scope of the agent's authority, and this question was left, as one of fact, to be determined by the jury. We are of the opinion that the court erred in this respect, and that there was no evidence in the case authorizing a verdict for the plaintiff. The apparent authority in this case was precisely co-extensive with the actual authority. The agent's real authority was confined to the duty of receiving consignments from the Meniers, storing and caring for them, selling them and, after paying the expenses of the business from the receipts, to remit the balance to the Meniers.

If the transaction of this business absolutely required the exercise of the power to borrow money in order to carry it on, then that power was impliedly conferred as an incident to the employment, but it does not afford a sufficient ground for the inference of such a power, to say that the act proposed was convenient or advantageous, or more effectual in the transaction of the business provided for, but it must be practically indispensible to the execution of the duties really delegated in in order to justify its inference from the original employment.

We are of the opinion that the case of *Tucker* v. *Woolsey* (64 Barb., 142), is in point. The facts of that case are the counterpart of those existing here. There the agent was furnished with goods to sell in New York for a principal in France. He there hired a place to store and show his goods. He also received special authority on several occasions to borrow money, as perhaps Bickford did here, but it was there held that the general power to borrow money was neither within the actual authority of the agent or its apparent scope.

We think the motion to nonsuit the plaintiff at the close

of her evidence should have been granted, and that it was error to deny it.

The judgments of the courts below should be reversed, and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.