STOCK EXCHANGE BANK v. L. P. WILLIAMSON.

(Filed July 30, 1897.)

1. PRINCIPAL AND AGENT—*Promissory Note.* The power of an agent to execute a promissory note for his principal must be expressly granted, or necessarily implied from the authority given the agent, and in order to be implied it must be shown to be strictly necessary to the complete exercise of the express authority; and the general authority of an agent to conduct the business of running stage lines for the carrying of passengers, mail and express, gives the agent no authority to bind the principal by a promissory note.

2. SAME—*Authority of Agent Implied.* The authority of an agent to make promissory notes is not implied from the act of the principal in directing his agent "to get one hundred dollars at a bank for ninety days" on a single occasion, different from the one in which the principal is sought to be bound; nor can such authority be implied from the fact that the same principal paid a single note made by another agent, in the same business, without authority.

3. AGENT—*Promissory Note—Ratification.* In order that a principal may be held to have ratified the acts of his agent in making promissory notes, he must have had knowledge of such acts of the agent, and assented thereto by the payment of such notes, or some other form of recognition, before the making of the note or notes in controversy.

4. PROMISSORY NOTE—*Agent—Principal Not Bound.* A principal is not bound by the unauthorized acts of his agent in making promissory notes, although the money derived from the execution of such notes may be due the agent for monies advanced to pay the expenses of the business he was conducting for his principal, and for the agent's salary.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Herod, Widmer & Overstreet* and *Blake & Blake,* for plaintiff in error.

*Cotteral & Hornor,* for defendant in error.

Action to recover upon two promissory notes. Judgment was had for defendant, from which the plaintiff appeals. Affirmed.

Opinion of the court by

BIERER, J.: The Stock Exchange bank brought this action to recover judgment upon two promissory notes, one for the sum of $125, dated El Reno, Oklahoma Territory, May 26, 1893, due thirty days after date, with interest from date at twelve per cent. per annum, and one for $103, dated El Reno, Oklahoma Territory, November 6, 1893, due December 6, after date, with interest at ten per cent. per annum from date. Each of these notes was signed "Western Mail & Stage Co., per J. B. May. J. B. May."

The defendant denied the execution of these notes, and the case proceeded to trial before a jury. After the plaintiff rested its case, the defendant interposed a demurrer to the evidence, which was sustained by the court, and judgment rendered for the defendant. It is to reverse the ruling of the trial court on this demurrer to the evidence that the appeal is taken.

The evidence in the case is brief, and shows these facts: That the Stock Exchange bank is a banking institution, engaged in business in the city of El Reno. That the defendant, L. P. Williamson, has been, since 1886, engaged in the business of running mail and stage lines in the Indian and Oklahoma Territories. That his stage business was styled "Western Mail & Stage Co.," though the defendant always signed his individual name to any transactions growing out of such business, and the name was never used by him except as an advertisement. In 1889, J. B. May began working for the defendant, and had his headquarters at Darlington, near El Reno. That when May was employed, one H. A. Todd had the superintendence of defendant's mail business, the defendant all the time residing at Independence, Missouri. That the superintendence of this business was, at different times, under H. A. Todd and R. C. Williamson, the defendant, L. P. Williamson, making occasional trips to the Territory, and also looking after the business. That May, however, in the absence of R. C. Willamson and Todd, had full charge of the businesss, and attended to the making of contracts for carrying mail, passengers and express, these contracts being generally made in defendant's name, but occasionally in May's name. .That May would collect monies, do the business of carrying passen-

gers and express, and sometimes the mail, and would attend to the payment of the expenses of the business. That the defendant kept no bank account of his business, nor authorized any to be kept; but May did keep a bank account in his own name, and deposited monies, and checked therefrom in his individual name, in the conduct of this business, and charged to Williamson, personally, his own salary and the other expenses of the business, and credited Williamson with the monies received.

Beginning with April 20, 1891, May negotiated numerous loans at plaintiff's bank, and signed notes therefor, the notes being signed "Western Mail & Stage Co. per J. B. May. J. B. May." That during the year 1892 R. C. Williamson made a note to plaintiff's bank for $304, signing it in the same manner, and placing the money to the credit of May. That the defendant subsequently sent May $300 to pay off this note. That on March 17, 1893, the defendant, who frequently wrote to May with reference to attending to business matters concerning this mail and stage business, wrote May "You had better get one hundred dollars at bank for ninety days." May borrowed one hundred dollars of the bank, gave his note in the usual form, and subsequently paid off the note; and on the dates indicated on the notes he made the notes in controversy, and received the monies therefor. The defendant never authorized May to execute any notes, or to sign his name or the name of the stage company thereto, and never knew until after the maturity of both the notes in question that May had executed these or any of the other notes. That May's employment by defendant ceased about the first day of December, 1893, and thereafter he made his report to the defendant, in itemized form, for

the business of that year, but neither this nor any of May's reports showed any of these note transactions. That May had intended to pay these notes himself, as usual. That the defendant sent May the sum of $150 after the report referred to, but he retained this money, and made no payment on the notes. The notes remaining unpaid, plaintiff brought this suit. Under these facts are the notes the notes of the defendant? Were they executed by May as his agent, in contemplation of law?

It is not claimed by plaintiff in error that there is any evidence in any way tending to show that defendant ever gave May any authority to sign any notes in his name, or in the name of the stage company, except such as might be implied from the letter directing the procurement of one hundred dollars from the bank; but it is claimed that the general authority of May in the management of this business empowered him to execute the notes, and also that he did, in fact, exercise this authority so frequently and so openly as that defendant is estopped from denying that May did possess the authority to bind the defendant by this manner of contract.

It is an elementary principle, that needs no elaboration, that an agent has the power to bind his principle within the scope of his employment; and under the evidence in the case it may be admitted that May was, as to third parties, a general agent for the defendant in the management of this stage and mail business. He was considered in the business as subordinate to R. C. Williamson and Todd, but these business affairs were frequently intrusted to him alone, the letters of the defendant showing that general directions, even to the extent of changing the lines, removing stables, and selling or trading portions of

the property being given to him. But did this general authority include the power to make promissory notes for the defendant? If it did, and May made the notes, then the defendant must be bound by them, no matter how numerous, or how large the amounts may have been, so the parties took the notes in good faith, and there is no denial of that here.

On this question Mecham on Agency, sec. 389, says:

"The power to bind the principal by the making or indorsing of negotiable paper is an important one, not lightly to be inferred."

The author then proceeds to quote the language of Hubbard, J., in the case of *Paige v. Stone,* 10 Metcalf, 160, where it was decided that:

"The power of binding by promissory negotiable notes can be conferred only by the direct authority of the party to be bound, with the single exception where, by necessary implication, the duties to be performed cannot be discharged without the exercise of such a power. To facilitate the business of note making, and thus affect the interest and estates of third persons to an indefinite amount, is not within the object and intent of the law regulating the common duties of principal and agent; neither is the power to be implied because occasionally an instance occurs in which a note, so made, should in equity be paid."

As we have seen, there was no direct authority to sign these notes, given. The defendant never authorized these notes to be made; and if the authority to make notes existed at all it must have been an implied and not a direct authority.

Concerning the implied authority of an agent to bind his principal by a promissory note, Mr. Tiedeman, in his work on Commercial Paper, sec. 77, says:

23—

"In order, therefore, that the authority to make or draw, accept and indorse, commercial paper as the agent of another may be implied from some other express authority, it must be shown to be strictly necessary to the complete execution of the express power. And the execution and negotiation of commercial paper are considered by the commercial world so liable to the infliction of injury on the principals, if this authority is given to agents—the general custom being to reserve this power for personal exercises—that the presumption of law is more strongly opposed to an implied authority to execute and negotiate commercial paper than to do anything else. Hence, in this connection, the rule is strictly enforced, that the authority to execute and indorse bills and notes as agent will not be implied from an express authority to transact some other business, unless it is absolutely necessary to the exercise of the express authority."

This author then states that the power is not given to an agent to make a promissory note by the authority "to transact all business," or "to do all lawful acts concerning all the principal's business of what nature or kind soever." The law is given to the same effect in Daniel on Negotiable Instruments, sec. 292.

We think it can hardly be contended, at least with any force, that the power to make a promissory note is absolutely necessary to the conduct of a business for carrying passengers, mail and express for hire. This is not, in any sense, a commercial business which in many instances and under many conditions requires the business to be done on credit, and therefore requres the making of promissory notes, and the drawing and accepting of bills of exchange; and no case is cited by counsel for plaintiff in error where any court has ever held, under any circumstances, that an authority of a most general and compre-

hensive kind to carry on for another a stage business, or any similar business, has been held to include the power to make promissory notes, and we have been unable to find any.

It is claimed, however, by plaintiff in error, that the authority to make these notes may be implied from the fact that the defendant did pay the note made by R. C. Williamson, and directed May to borrow one hundred dollars in March, 1893. This claim is not tenable. The willingness of the defendant to pay a note made by R. C. Williamson, and which the defendant had not authorized, could not be construed even into an authority to pay other notes made by R. C. Williamson; and much less could it be construed to mean that the defendant would pay all notes made by May. The direction given to May to borrow the money, even if it should be held to have authorized May to borrow the money in defendant's name, could not be construed to extend May's authority beyond the single instance in which it contemplated the use of the defendant's credit. If it was an authority at all, it was a specific authority, and not a general one; an authority to procure at one time, on a specific period of credit, one hundred dollars, and not to borrow a number of hundreds of dollars on an indefinite credit. Conceding this to have been an authority to make one loan, it was not an authority to continue or repeat the loan. And an authority given to execute a note gives no authority even to renew the same note. (Tiedeman on Commercial Paper, sec. 77; Daniel on Negotiable Instruments, sec. 291.)

Nor can the authority of May to sign these notes for the defendant be implied from the course of May's dealing

with this bank.  It is true, as claimed by plaintiff in error, that where one allows another to be held out to the public as possessing an authority, he is bound by the exercise of that authority by the person exercising it.  But in order that the principal may be bound, he must have knowledge of the exercise of such authority on the part of the agent, or it must have been of so open and notorious a character as that the knowledge may be inferred from the manner of dealing.  We think it would be carrying the doctrine entirely too far to say that a man in Missouri is to be bound by the authority exercised in the making of a note or notes by his agent in Oklahoma, without authority, and without any notice whatever to the principal, and where the transaction appears to have been known only to the bank taking such notes and the agent who signed them.  There can never be a ratification of an act of an agent by a principal who is ignorant of the act, and this case does not come within the rule of the authority which is implied from previous ratifications of the agency, as stated in sec. 79 of Tiedeman's work on Commercial Paper.

The claim that the defendant should be held liable for these notes because he received the benefit of the proceeds thereof is also untenable.  The money paid by the bank on these notes did not go to the defendant, but was paid to May, or left in the bank to May's credit.  It is true that May states in a somewhat indefinite manner that a part of this money was checked out in paying the accounts of the defendant incurred in the running of this business; but the money was all either paid to May individually, or left in the bank to his credit.  He also claims that the defendant owed him for wages, and that the

amount of money which he personally retained was due him from the defendant. We hardly think, however, that he was authorized to procure the payment of defendant's obligation to him by the making of a promissory note for his principal.

The evidence shows that May made these notes intending to pay them back from remittances which he expected to receive from Williamson, as he had been in the habit of doing, and that although Williamson sent him $150 on his claim of $300 for the balance due him personally for salary, and for monies he had advanced in paying the expenses of the business, he has failed to pay any of this amount to the bank; and this payment of $150 by the defendant was made before the bank gave him any notice that it expected to hold him for the payment of these notes.

If the defendant actually owes May any balance for his services and advancements made, the plaintiff may be able to have that amount applied on these notes in an action against May, but we do not think that for any of the reasons urged by plaintiff in error the defendant can be held liable on these notes. There was no error in sustaining the demurrer to the evidence, and the judgment is therefore affirmed.

Dale, C. J., having presided in the court below and Keaton, J., who was of counsel, not sitting; all the other Justices concurring.