## MADILL OIL & COTTON CO. v. CITY NAT. BANK.

No. 8869—Opinion Filed May 14, 1918. Rehearing Granted Nov. 19, 1918. Order Granting Rehearing Set Aside and this Opinion Adopted Dec. 14, 1920.

(193 Pac. 878.)

1. **Principal and Agent—Liability of Principal for Money Loaned Agent.**

In order to hold a principal liable for money loaned or advanced to its agent, it must appear that the agent had authority to borrow for his principal, by showing that the agent had express authority, or that authority arises by necessary implication from the nature of the duties of the agent, or that the principal by his acts had brought the same within the apparent authority of the agent, or that the borrowing of money by the agent had been ratified by the principal.

2. **Corporations—Local Agent of Foreign Corporation—Implied Authority to Borrow Money.**

The fact that the local agent of a foreign corporation which owned and operated a cotton seed mill in the state had the management of said mill, with authority to purchase cotton seed and issue checks in the name of the corporation against its bank account in payment therefor, and superintended the manufacturing of the cotton seed into products, and the authority to sell the same, is not sufficient to confer authority upon such agent to borrow money for the company and render it liable for the payment thereof, where it appears that the borrowing of money was not necessary to carry on the business; nor do such facts bring the borrowing of money within the apparent scope of authority of such agent so as to bind the company.

(Syllabus by Pryor, C.)

Appeal from District Court, Oklahoma County; Edward D. Oldfield, Judge.

Action by the City National Bank against the Madill Oil & Cotton Company. Judgment for plaintiff, and defendant appeals. Reversed.

Ames, Chambers, Lowe & Richardson and Chas. S. Mitschrich, for plaintiff in error.

George S. March and Ledbetter, Stuart & Bell, for defendant in error.

Opinion by PRYOR, C. This action was commenced in the district court of Oklahoma county by the City National Bank of Madill, defendant in error, against the Madill Oil & Cotton Company, plaintiff in error, for

.the recovery of judgment in the sum of $6,-755.50. The parties will be referred to as they appeared in the trial court.

The plaintiff claims that the amount sought to be recovered is an indebtedness that arose by reason of money loaned and advanced to the defendant through its authorized agent and manager, J. W. Hockaday. The defense of the defendant is that the said agent, J. W. Hockaday, had no authority to secure loans from the plaintiff and bind the defendant company for the payment thereof.

The undisputed evidence establishes the following facts: That the defendant, the Madill Oil & Cotton Company, is a foreign corporation, organized and existing under the laws of the state of Texas and doing business in the state of Oklahoma and operating a cotton seed oil mill at Madill; that during the season in the fall of 1915, J. W. Hockaday was the manager of the plaintiff's mill at Madill, with authority to purchase cotton seed, manufacture therefrom products and sell the same; that the funds for carrying on the business at Madill were furnished by the president of the company by remittance to the First National Bank, and in addition to these remittances made to the bank, it had made arrangements with the First National Bank for additional loans to supplement its funds to carry on the business. The company carried its account with the First National Bank. The said agent, Hockaday, bought cotton and cotton seed for the company. He made arrangements with the plaintiff bank that he would draw checks on the bank in favor of people from whom he purchased, and on each day he would go to the plaintiff bank and change the checks into drafts by inserting the name of the Madill Oil & Cotton Company. The evidence further shows that this arrangement with the bank was to be kept secret, the reason given by Hockaday to the bank for the secrecy being that if the neighboring gins discovered that he was buying cotton, they would refuse to sell seeds to the defendant company. The evidence is undisputed that the agent and manager Hockaday had no authority to purchase cotton, and the defendant oil and cotton company had no knowledge or notice of any arrangement that the manager and agent had made with the plaintiff bank whereby the indebtedness was incurred. The evidence shows that the president of said company, Mr. Lawrence, when told that Hockaday had made the arrangement with the bank and had incurred such indebtedness, that he immediately denied any knowledge of the transaction, and denied any

liability by reason of the same, and expressed denial that Hockaday had any authority to borrow any money or secure credit for said company. He offered, however, to repay the bank all of the funds used by Hockaday in the purchase of seed which the company had received, and tendered his services to the bank in helping them to straighten out the matter, and did assist the bank in disposing of the cotton on hand, the proceeds of which the bank received and applied on the indebtedness.

The only question presented is the authority of the agent Hockaday to bind the defendant company. There being no express authority given to the agent to borrow money, if he possessed such authority it must have arisen from a necessary implication from the nature and scope of his employment and duties, or the company must have by its conduct acted in such manner as to make the acts of the agent come within the apparent scope of his authority. There are no facts or circumstances from which the bank could infer that the agent and manager Hockaday had authority to borrow money and secure credit for the oil company, except the fact that he was the manager of the defendant company, with authority to purchase seed, manufacture the products and sell the same, and to draw checks upon the defendant company's account in payment of the purchases made. These facts, standing alone, are wholly insufficient to justify the conclusion that the said agent and manager had authority to borrow money and secure credit for said company.

The Circuit Court of Appeals in the case of C. R. I. & P. Ry. Co. v. Chickasha National Bank, 174 Fed. 923, 98 C. C. A. 535, held:

"An agent authorized to purchase cotton for his principal in a particular locality from any persons having the same for sale and at any price agreed on between them, was a general agent, with implied authority to bind his principals by any contract for the purchase of cotton in that locality, but such implied authority did not extend to the opening of an account with a bank in the name of his principals, borrowing money and pledging their securities as collateral therefor, where the same was not a necessary incident to the business of purchasing cotton; such power being an unusual one to be conferred on an agent, and not to be implied whether his agency is general or special, unless the very nature of his business requires its exercise."

In the body of the opinion the court says:

"However, the question as presented is: Did Carter, the general agent of Wolff & Co., for the purpose of buying cotton on their account in the neighborhood of Chickasha, possess the implied authority to make the contract he did make with the bank, and on the strength of this contract bind

his principal either to the repayment of money borrowed by him from the bank, or by his act in pledging the evidences of the ownership of the cotton in dispute as collateral security for such repayment. Independently of any claim of ratification made by the bank, it is apparent the true solution of this problem must depend, not on the extent of the power possessed by the agent to bind his principals by his contracts for the purchase of cotton at all, for his acts in that regard were clearly within the scope of his employment as contemplated by the parties, but it must depend on whether the borrowing of money on account of his principals, and the pledging of their securities for its repayment, was a necessary incident to the business of purchasing the cotton. If so, the authority will be implied from the general grant of power conferred, and the principals will be held to have contemplated it when the agency was formed, and to be bound by its exercise by the scope of the employment of the agent, and the bank would be justified in dealing with Carter as it did in this case. * * * The bank did not, as it might have done for its protection, first learn the full extent of the power possessed by Carter from his principals, but, on the contrary, assumed to engage in the business without any investigation and in reliance on appearances and the word of the agent; hence if loss befall it, such loss must be attributed to its neglect to properly advise itself before engaging in the business.

* * * The granting of power to an agent to borrow money on account of his principals, and to pledge their property as security for its repayment, is an unusual confidence to repose in the discretion of an agent, and, being a grant of unusual power, to establish its existence, must be shown, or the very nature of the business to be transacted by the agent must require the exercise of such extraordinary authority; and this is true whether the agency be general or special in character."

The Supreme Court of Illinois, in the case of Merchants' National Bank v. Nichols & Shepard Co., 223 Ill. 41, 79 N. E. 38, 7 L. R. A. (N.S.) 752, uses the following language:

"There is no claim that the power was expressly given, but the argument is that the power arose out of the nature of the agency, and that plaintiff had a right to assume that the power existed. It is to be remembered that persons dealing with an assumed agent are bound, at their peril, to ascertain, not only the fact of the agency, but the extent of the agent's authority. They are put upon their guard by the very fact that they are dealing with an agent, and must, at their peril, see to it that the act done by him is within his power. It is their right and duty to ascertain the extent of his power, and to determine whether his act comes within the power and is such as to bind his principal. Mechem on Agency, § 276; Reynolds v. Ferree, 86 Ill. 570; 1 Am. & Eng. Ency. of Law

(2d Ed.) 987. An agent cannot confer power upon himself, and therefore his agency or authority cannot be established by showing either what he said or did. Proctor v. Towns, 115 Ill. 138 (3 N. E. 569); Mullanphy Savings Bank v. Schott, 135 Ill. 655.

"The source of authority is the principal, and the power of the agent can only be proved by tracing it to that source in some word or act of the alleged principal. In this case there was no evidence tending to prove that the power to borrow money was an incident of the agency. For such an act as that an agent must have express authority, or some power must be expressly conferred upon him which cannot be otherwise executed."

The Supreme Court of Georgia, in the case of Exchange Bank v. Thrower, 118 Ga. 433, 45 S. E. 316, in discussing this proposition, says:

"Authority to borrow money is among the most dangerous powers which a principal can confer upon an agent. Whoever lends to one claiming the right to make or indorse negotiable paper in the name of another does so in the face of all the danger signals of business. He need not lend or discount until assured beyond doubt that the principal has in fact appointed an agent who by the stroke of a pen may wipe out his present fortune, and bind his future earnings. The very nature of the act is a warning, and if the lender parts with his money, he does so at his own peril if the power was not in fact conferred, he must bear the loss occasioned by own folly. A power so perilous is not to be implied from acts which in other matters less hazardous might create an agency. It must be conferred in express terms, or be necessarily and inevitably inferable from the very nature of the agency actually created. So strict is the rule that it will not be presumed, even from an appointment of one as general agent, unless the character of the business or the duties of the agent are of such a nature that he was bound to borrow in order to carry out his instructions and the duties of the office."

Other authorities sustaining this proposition are: Bickford v. Menier, 107 N. Y. 490, 14 N. E. 438; Consolidated Nat. Bank v. Pac. Coast S. S. Co., 95 Cal. 1, 30 Pac. 96, 29 Am. St. Rep. 85; Mechem on Agency, § 395; Heath v. Paul, 81 Wis. 532, 51 N. W. 876; Williams v. Dugan, 217 Mass. 526, 105 N. E. 615, L. R. A. 1916C, 110; Stock Exchange Bank v. Williamson, 6 Okla. 348, 50 Pac. 93.

In Stock Exchange Bank v. Williamson, supra, the Supreme Court of the Territory uses the following language:

"It is true, as claimed by plaintiff in error, that where one allows another to be held out to the public as possessing an authority, he is bound by the exercise of that authority by the person exercising it. But in order that the principal may be bound, he must have knowledge of the exercise of such authority

on the part of the agent, or it must have been of so open and notorious a character as that the knowledge may be inferred from the manner of dealing. We think it would be carrying the doctrine entirely too far to say that a man in Missouri is to be bound by the authority exercised in the making of a note or notes by his agent in Oklahoma, without authority, and without any notice whatever to the principal, and where the transaction appears to have been known only to the bank taking such notes and the agent who signed them."

Under the foregoing authorities it is clearly established that the authority of an agent, without express authority from his principal to borrow money, is only implied where the borrowing of money is a necessary incident to the performance of the duties within the scope of his authority from his principal: that the authority to borrow money is not necessarily implied from the fact that the agent was the manager of the mill of the defendant at Madill, with authority to purchase cotton seed, manufacture the same into products, and sell the products, and to draw checks upon the company's account at the First National Bank. The evidence fails to show that the agent was acting within the apparent scope of his authority. It appears that the bank, in the absence of any facts that would justify it in inferring that Hockaday had any authority to secure the same, extended its credit to Hockaday without any inquiry or investigation as to his authority to bind the defendant company. Borrowing money was not necessary to the performance of the duties of the agency. To hold under the circumstances that the defendant company is liable would be setting a dangerous precedent, allowing one person to bind another without the semblance of authority.

As to the acts of the president of the company constituting a ratification of the transactions of the agent, the evidence fails to establish any ratifications at all. Whatever assistance Mr. Matthews rendered the bank in disposing of the cotton on hand, the proceeds of which the bank received, seems to have been rendered without question, with intent only of assisting the bank in straightening out its affairs with Hockaday. It must be held, therefore, that the court erred in holding that the said Hockaday acted within the scope of his authority in procuring the advancement of funds sought to be recovered from the defendant.

As this cause must be reversed, there is one other question raised by the plaintiff in error that should be passed upon. This case was commenced in the district court of Oklahoma county within the Western Federal

Judicial District. The defendant made motion to have the same removed to the federal court. It appears that the defendant is a resident of the state of Texas., and that the plaintiff is a resident of the state of Oklahoma within the Eastern federal judicial district. The trial court denied the application for removal to the federal court. The order of the trial court denying the removal of said cause is sustained by the following authorities, which are squarely in point and decisive of the question raised: St. Louis & San Francisco Ry. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60; M. K. & T. Ry. Co. v. Robnett, 57 Okla. 470, 157 Pac. 72; Ft. Smith & W. R. Co. v. Knott, 60 Okla. 175, 159 Pac. 847.

The trial court committed no error in denying the petition for the removal of said cause.

The judgment of the trial court is reversed.

By the Court: It is so ordered.