FIRST & OLD DETROIT NAT. BANK v. HOLLOMAN et al.

No. 10561.—Opinion Filed June 20, 1922.

(Syllabus.)

1. Carriers—Transfer of Bill of Lading to Bank—Title to Property.

Ordinarily where a bank takes an assignment of a bill of lading and pays the accompanying draft of the shipper to the full value of the goods described in the bill of lading, the bank becomes a bona fide holder and no attachable interest in the goods or proceeds thereof remains in the shipper.

2. Same — Banks and Banking—Crediting Draft—Rights of Bank When Draft Unpaid.

Where the drawer of a draft indorses it to a bank and transfers to the bank an accompanying bill of lading and receives credit on his account with the bank for the amount of the draft, the bank has a right as a matter of law to charge back to the account of the drawer the amount of the draft if not paid, and if it was the intention of the parties at the time the draft was deposited and the bill of lading assigned that the bank was acting only as the collecting agent of the drawer of the draft, such bank by reason of the assignment of the bill of lading would have a lien on the property described in the bill, and such property would not be subject to attachment until the bank had received the money advanced.

3. Same—Attachment of Property by Creditor of Drawer—Priorities of Liens.

Record examined, and held, that the interpleading bank was in possession of the property in controversy, and that the property was not subject to the attachment of the plaintiff.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Ira J. Holloman against the Detroiter Motor Car Company, a corporation, to recover money had and received and damages. Attachment levied on four automobiles. The First & Old Detroit National Bank of Detroit, Mich., interpleaded. Judgment in favor of the plaintiff and attachment sustained. Interpleader appeals. Reversed and remanded, with directions.

Embry, Johnson & Kidd, for plaintiff in error.

Keaton; Wells & Johnston, for defendants in error.

KENNAMER, J. Ira J. Holloman, plaintiff, commenced this action on the 2nd day of October, 1916, in the district court of Oklahoma county against the Detroiter Motor Car Company, a corporation, defendant, to recover the sum of $2,526.55 for money had and received and $2,000 damages for breach of contract. The defendant, Detroiter Motor Car Company, is a foreign corporation organized under the laws of the state of Michigan. The plaintiff caused an order of attachment to issue and be levied upon four automobiles stored in the O. K. Storage Warehouse in Oklahoma City; warehouse receipts having been issued against each automobile separately and said receipts attached to drafts in the American National Bank of Oklahoma City.

The First & Old Detroit National Bank of Detroit, Mich., interpleaded in the action instituted by Holloman, alleging that it was the owner of the automobiles attached under the order of attachment. That on the first day of April, 1916, the Detroiter Motor Car Company delivered the attached property to the Grand Trunk Railway Company, a common carrier, and received from the carrier a bill of lading whereby the automobiles were consigned and billed to the order of the Detroiter Motor Car Company at Oklahoma City with directions to notify T. F. Foster. That a bill of lading covering the four touring cars attached by the plaintiff was issued and delivered to Detroiter Motor Car Company. That on the first day of April, 1916, the Detroiter Motor Car Company drew a draft in favor of the First & Old Detroit National Bank for the purchase price of the automobiles in the sum of $4,152.40, which draft was drawn on T. F. Foster, and that on said date the defendant, Detroiter Motor Car Company, indorsed the bill of lading in writing, presented, assigned, and delivered the same to the interpleader. That the interpleader paid to the said defendant the sum of $4,152.40 for the draft and the assignment of the bill of lading. That by the assignment of said draft and bill of lading and the payment of $4,152.40 to the Detroiter Motor Car Company, the interpleader became the owner of said automobiles and accessories so attached by the plaintiff.

To the interplea the plaintiff filed answer, denying all the material allegations of the plea, alleging that the transfer of the draft and bill of lading by the defendant to the interpleader was made with a fraudulent purpose to defeat the rights and claims of the plaintiff, and that the interpleader had waived its right to ownership and possession of the property.

The cause was tried upon the issues joined by the pleadings to a jury, which returned a verdict in favor of the plaintiff. Motion for a new trial was filed by the interpleader, which was by the trial court overruled, exceptions allowed, and judgment entered in favor of the plaintiff for the possession of the cars or their value in the sum of $2,800. The interpleader has prosecuted this appeal to reverse the judgment of the trial court. The defendant, Detroiter Motor Car Company, made default, and the plaintiff took judgment against the defendant for the amount sued for in the action. The interpleader has assigned 52 specifications of error as ground for reversal of the judgment of the trial court. We will refer to the parties to this appeal as they appeared in the trial court, interpleader and plaintiff.

Counsel for the interpleader argue under their second proposition for reversal that the trial court erred in refusing to instruct the jury to return a verdict for the interpleader. Upon an examination of this record we believe that a decision as to this assignment of error is decisive of this controversy. We fail to find any material conflict in the testimony introduced in the trial of the cause upon the material issues necessary to be considered in arriving at a conclusion decisive of the cause.

The uncontradicted testimony shows the facts to be substantially as alleged by the interpleading bank in its plea of intervention. There is no conflict in the evidence to the effect that the bank paid to the defendant, Detroiter Motor Car Company, full value for the draft, its assignment, and the transfer of the bill of lading to the interpleader. That on the date of the institution of this suit the attached cars were stored in the O. K. Storage Warehouse in Oklahoma City, having been removed from the cars of the railway company and placed in storage by consent of the interpleader. That warehouse receipts were issued for each car and attached to the draft in the American National Bank, the collecting bank for the interpleader, as substitutes for the bill of lading. This arrangement was entered into for the purpose of affording Foster, or Holloman, associated with Foster in the automobile business, the opportunity of ob-

taining possession of one car at a time instead of having to pay the total amount of the draft in order to secure one car. It is not seriously contended that the interpleader under this arrangement relinquished its possession or control of the cars.

On the date of the institution of the action and the levying of the attachment on the cars, the interpleading bank had never been paid the amount of $4,152.40, which it paid to the defendant, Detroiter Motor Car Company, for the draft and the transfer of the bill of lading accompanying the same. A long time prior to the institution of the action the entire amount paid by the interpleader to the defendant had been withdrawn from the interpleading bank.

Under these facts, as disclosed by the record, we are clearly of the opinion that the trial court erred in not instructing the jury to return a verdict for the interpleader. We fail to perceive of any reason why this case is not controlled by the rule that the transfer of a bill of lading made in favor of the assignor and by him indorsed to a bank with draft attached, which draft is paid by the bank to the assignor, has the effect to transfer the legal title of the property called for in the bill of lading to the bank. This rule is supported by the great weight of authority, and has been adhered to by this court in many cases. State Nat. Bank of Oklahoma City v. Wood, 43 Okla. 251, 142 Pac. 1002; Marsh Milling & Grain Co. v. Guaranty State Bank of Ardmore, 69 Oklahoma, 171 Pac. 1122; St. L. & S. F. Ry. Co. v. Mounts, 44 Okla. 362, 144 Pac. 1038; First Nat. Bank of Claremore v. Stallings, 74 Oklahoma, 177 Pac. 373.

In the case of State National Bank of Oklahoma City v. Wood, supra, the third paragraph of the syllabus reads:

"Where a bill of lading in favor of the assignor is by him indorsed to the bank with draft attached and the draft paid to the assignor by the bank, held, that such a transaction had the effect to transfer the legal title of the property called for in the bill of the bank."

In the case of Means et al. v. The Bank of Randall, 146 U. S. 620, 36 L. Ed. 1107, the court held:

"The bill of lading represents the goods named therein, and the transfer of the ownership as well as of the right of possession is made as effectually by the transfer of the bill as it can be by a physical delivery of the goods."

In the case of Fourth National Bank of Montgomery v. W. G. Bragg, 102 S. E. 649, 11 A. L. R. 1034, the Virginia Supreme Court of Appeals held:

"A bank which credits the amount of a draft to the depositor, and permits him immediately to draw against it, becomes the owner of it and the bill of lading which is attached to it, although it reserves the right to charge back the amount in case the draft is not paid."

Other authorities supporting this rule are: Haas v. Old National Bank of Evansville (Ga.) 18 S. E. 188; Holmes Lafferty & Co. v. German Security Bank, 87 Pa. St. 525; Farmers' & Mechanics' Bank v. Logan, 74 N. Y. 568; Marine Bank v. Wright, 48 N. Y. 1; Dows v. Nat. Exchange Bank, 91 U. S. 618, 23 L. Ed. 214; Hathaway v. Haynes, 124 Mass. 311; Emery & Sons v. Irving Nat. Bank, 25 Ohio St. 360.

Counsel for the plaintiff appear to predicate their whole defense upon two general propositions: First, the good faith and reality of the alleged purchase. The effect of the subsequent conduct of the parties in dealing with the cars after the alleged purchase. The first contention of counsel for plaintiff involves the question of fraud in the assignment of the draft and bill of lading. We fail to find any evidence in the record justifying an inference of fraud. It appears that the transfer of the draft and bill of lading to the interpleader was nothing more than just an ordinary everyday commercial transaction. A party asserting fraud always has been the burden of establishing it by clear and convincing evidence. Fraud is never presumed. 20 Cyc. 225; Adams v. Porter, 58 Okla. 225, 158 Pac. 899; Pickle v. Bank (Wash.) 112 Pac. 654; Elliott v. Merriman et al., 47 Okla. 717, 150 Pac. 695; Moore v. Adams, 26 Okla. 48, 108 Pac. 392.

No inference of bad faith may be drawn from the mere fact that the defendant continued, after the assignment of the draft and bill of lading, to be interested in the delivery of the cars to the consignee and the payment of the draft, nor does such conduct on the part of the defendant militate against the right of the interpleader to the proceeds of the draft. It is evident that if the consignee failed to receive the property and pay the draft, the defendant would be required to refund to the interpleader the money advanced to it upon the draft.

Counsel for the plaintiff have cited many authorities in their brief announcing the

rule that the transfer of a bill of lading puts the legal title of the property consigned therein in the transferee, but that the transferee's title is conditional and not absolute. That the transferee could hold and control the property until draft was paid, and if not paid, could dispose of sufficient property to repay itself for the money advanced or paid for the draft. S. Blaisdell, Jr., Co. v. Citizens' National Bank of Tyler (Tex.) 75 S. W. 292; First National Bank v. Mineral Wells & E. P. St. Ry. Co. (Tex. Civ. App.) 133 S. W. 1099. Under the rule announced in these cases the interpleader was entitled to the possession of the cars until all the money it had advanced on the draft had been repaid to it.

In the case of J. C. Haas Co. v. The Citizens' Bank of Dyersbury (Ala.) 39 South. 129, the court held:

"Assignments of bills of lading are not governed by commercial law, but the transferee simply acquires the title of the transferor to the goods described thereby."

The rule was also announced in this case that, the bank having become the owner of the property by the transfer of the bill of lading, the bank was responsible for the delivery of the goods in accordance with the terms of the executory contract of sale as made by the transferor of the draft. This case in no way has any application to the issues involved in the case at bar, for the reason Foster, to whom the automobiles in controversy were sold and upon whom the draft was drawn, is not a party to this action making any complaint as to a failure of the defendant to fulfill the terms of the contract of sale of the cars. The cars in controversy were not sold to the plaintiff, nor was any draft drawn upon him for the purchase price of the same.

In the case of W. J. Barton Seed, Feed & Implement Co. v. Mercantile Nat. Bank et al. (Tenn.) 160 S. W. 848, relied on by counsel for the plaintiff, the court held:

"In determining whether a draft was received by a bank for collection only, or whether it became the absolute owner, where it was deposited subject to check under an agreement that if returned uncollected the bank should charge it back to the depositor, the intention of the parties, as evidenced by their acts, controls.

"Where a draft was deposited with a bank subject to check up to its face value the same as cash deposit, under an agreement, however, that if it was returned uncollected, the bank could charge the amount of the credit back, the transaction was at most a conditional sale of the draft to the bank, conditioned upon the collection of the draft.

"Where a draft was deposited with a bank and full credit was given to the depositor as for a cash deposit, under an agreement, however, that if the draft were not collected, the amount of the credit should be charged back to the depositor, the draft was subject to garnishment for the depositor's debts to the extent of his interest when the garnishment notice was served. * * *

"Where a draft made upon the purchaser of goods was deposited in a bank by the seller with the bill of lading attached, and a checking credit was given to the depositor under an agreement to charge back the amount should the draft be returned uncollected, the bill of lading was merely security for the collection of the draft, whether it were made out to the consignee or to the shipper's order. * * *

"The question for decision is whether the Mercantile National Bank became the absolute owner of the draft, or whether the draft was received by it only for collection. This is to be determined by the intention of the parties as evidenced by their acts. We are of the opinion that the agreement to charge back in case the paper should be returned is a controlling consideration. It is irreconcilable with absolute ownership on the part of the bank. An agreement in advance to charge back on failure of collection, imports necessarily only a limited ownership, as in case of a bailment. Under the most extreme view, the drawing of the draft in favor of the bank, under the facts stated, could amount only to an agreement for a conditional sale of the paper; that is, that the property should belong to the bank in case collection should be made, but in case it should not be made, then the paper should revert to the drawer. At least this would be but an indirect way of stating a collection contract, when considered in connection with the deposit of the face amount of the draft, and the right accorded by the bank to check on the deposit. The substance of the transaction would be a loan of credit by the bank for face value of the paper, based on the paper as security therefor, to be paid out of the collection when made; if not made, the paper to be returned, and the indebtedness to stand in favor of the bank, to be made good otherwise by the customer."

We are unable from any view of the facts in the case at bar to harmonize the judgment of the court with the rule as announced in this case; whether the interpleader be the absolute owner or the conditional owner of the automobiles in controversy, under either theory, the plaintiff was not entitled to the possession of the cars or the right to attach the cars until the

interpleader received its money which it advanced on the assignment of the bill of lading and draft. The bare fact that the plaintiff or his associate, Foster, may have made some complaint of defects of former shipments of cars to the American National Bank, the collecting bank for the interpleader, would be sufficient to establish fraud on the part of the interpleader in purchasing the draft and bill of lading. for the cars in question. There is no contention that there was anything existing on the date the draft and bill of lading were assigned to the interpleader that would have prevented the interpleader from having purchased the cars consigned in the bill of lading and had them actually delivered to it. That is, the cars consigned in the bill of lading. The plaintiff in this action had no claim whatsoever that would in any way have prevented an actual sale and delivery of the cars to the interpleader in Detroit, Mich. Therefore. it is inevitable that the interpleader had a right to purchase the draft and take a delivery of the cars by an assignment of the bill of lading.

In the case of Alamo Nat. Bank of San Antonio v. Dawson Produce Co. et al., 78 Okla. 235, 190 Pac. 393, it was held:

"Where a bank purchases a bill of exchange from the drawer before maturity, and gives the drawer credit on his deposit account in the bank for the face value of the bill, such transaction only creates the relation of debtor and creditor, and does not constitute the bank a purchaser or holder for value; but if the deposit is drawn or checked out before the bill is accepted, the bank then becomes a purchaser for value."

In that case on the date of the trial it was clearly shown that the bank had not released the money paid for the bill of exchange and was in a position to charge it back to the drawer of the bill of exchange without losing anything. That action was one instituted by the drawee against the drawer of the bill of exchange, and the case turned upon the fact that the funds paid for the bill of exchange had not been withdrawn from the bank. In the case at bar the undisputed evidence shows that the funds paid for the draft had been withdrawn in May prior to the bringing of the action in October.

Under the rule announced in the case of Alamo Nat. Bank of San Antonio v. Dawson Produce Co. et al., supra, the interpleader, on the date the defendant withdrew the funds deposited to its credit, became the absolute owner of the cars represented by the bill of lading and a purchaser for value of the bill.

In the case of First Nat. Bank of Siloam Springs, Ark., v. Munding, 83 Okla. 70, 200 Pac. 158, it was held that where the drawer of a draft deposits it in a bank where such drawer is transacting his banking business, and receives credit in his checking account for the amount of the draft with the understanding that if the draft is not paid the bank has the right to charge the account of the drawer with the amount of the draft, and the bank charges the drawer interest on the draft until the money is received on it, the bank was merely acting as the collecting agent of the drawer of the draft, and that the proceeds of the draft belonged to the drawer and were subject to garnishment. Under the facts of that case the judgment of the trial court decreeing the proceeds of the draft subject to garnishment was affirmed on the theory that the bank receiving the draft acted purely as the collecting agent of the drawer. But we know of no case wherein it is held that after the money has been withdrawn from the bank taking an assignment of the draft and bill of lading from the drawer, it is not entitled to retain the possession of the property described in the bill of lading until it has received the money advanced by it in consideration of the assignment of the draft and bill of lading. In the instant case it is obvious that the interpleading bank is entitled to retain its possession of the property in controversy until it has received the money advanced to the defendant on the assignment of the draft and the accompanying bill of lading.

Viewing the case upon the theory that at the time the interpleading bank received the draft from the defendant and the transfer of the bill of lading, it was the intention of the parties that the bank was only acting as the collecting agent of the defendant, the evidence is uncontradicted to the effect that the bank did advance to the defendant $4,152.40, and that at the time this action was instituted all of the funds advanced to the defendant had been withdrawn from the bank. Unquestionably, in this situation, the bank would at least have a lien upon the property in controversy for the money advanced, and the transfer of the bill of lading gave the bank the possession and control of the cars described in the bill of lading. The bank has never released its possession or waived its right to possession of the property, and while under the general rule that the assignment of the bill

of lading passes the title of the property to the bank, if it be conceded that the bank has not the legal title under the facts as disclosed by the record, we conceive of no reason how the bank could be deprived of its possession and control of the property until it is shown that the bank has received the money advanced on the assignment of the bill, or is at least in a position to repossess itself of the amount of money advanced to the defendant on the date of the assignment by charging its account with the amount advanced on the draft.

It is the duty of the trial court, where there is no competent evidence offered at the trial by the plaintiff in support of the allegations of his petition, to direct a verdict in favor of the defendant, St. L. & S. F. Ry. Co. v. Bloom, 39 Okla. 78, 134 Pac. 432.

When the evidence is insufficient, with all inferences that may reasonably and legally be drawn therefrom, to support a verdict for the plaintiff, the court should direct a verdict against him. Bell v. Lynde-Bowman Darby Co., 38 Okla. 172, 132 Pac. 477.

"Where it is apparent from the record that the evidence does not reasonably sustain the verdict of the jury, this court will set said verdict aside and grant a new trial." Conwill v. Eldridge, 71 Oklahoma, 177 Pac. 79, citing Stock Exchange Bank v. Williamson, 6 Okla. 348, 50 Pac. 93; Harrah v. First National Bank, 26 Okla. 620, 110 Pac. 725; Solts v. S. W. Cotton Oil Co., 28 Okla. 706, 115 Pac. 776; Offutt v. Wagoner, 30 Okla. 458, 120 Pac. 1018; Fitzpatrick v. Nations, 30 Okla. 462, 120 Pac. 1021.

The judgment of the trial court is reversed, and the cause is remanded, with directions to grant the interpleader a new trial and proceed with the cause in harmony with the views herein expressed.

HARRISON, C. J., and JOHNSON, ELTING, and NICHOLSON, JJ., concur.

McNEILL, J., concurs in the law announced in the first and second paragraphs of the syllabus.